# SHARE SALE AND PURCHASE AGREEMENT

**THIS AGREEMENT** (the "Agreement") is made as of April ,____2010, by, between and among:

**Pillo Financial Consulting Corp,** a company duly incorporated under the laws of the United States of America, with registered office at 3701 Connecticut Avenue, NW # Washington D.C.,

hereinafter referred to as the "Seller"

**ON THE ONE HAND**

**Mr. Philip Neuman,** with a business address at 345 State Route 17, Upper Saddle River, New Jersey

hereinafter referred to as the "Buyer"

**ON THE OTHER HAND**

The Seller and the Buyer are hereinafter collectively referred to as the "Parties" and individually as a "Party".

**IN PRESENCE OF**

**Carlisle Investment Group S.à r.l.,** (hereinafter referred to as the "Company") a *société à responsabilité limitée*, organised and existing under the laws of Luxembourg, with registered office at 9, rue Sainte Zithe, L-2763 Luxembourg,

**WHEREAS**:

The Company is a *société à responsabilité limitée*, organised and existing under the laws of Luxembourg, with registered office at 9, rue Sainte Zithe, L-2763 Luxembourg and registered with the Luxembourg Trade and Companies Register under number B 114258.

The Company has a subscribed share capital of twelve thousand five hundred euros (EUR 12,500.-) divided into twelve thousand five hundred (12,500) shares with a par value of one euro (EUR 1.-) each.

The Seller is the owner of 12,500 shares of the Company.

The Seller desires to sell 6,250 shares of the Company (the "Shares") to the Buyer and the Buyer desires to purchase the Shares owned by the Seller, according to the terms and conditions set out in this Agreement.

**IT IS THEREFORE AGREED AS FOLLOWS:**

**Article 1 – Sale and purchase of shares of the Company**

1.1 The Seller hereby agrees to sell the Shares of the Company to the Buyer and the Buyer hereby agrees to purchase the Shares pursuant to the terms and conditions set out below.

1.2 The Buyer shall acquire the Shares free from all rights, liens, charges, guarantees, pledges, options or other restrictions or third party rights of any nature whatsoever.

**Article 2 – Consideration**

The consideration for the sale and purchase of the Shares, receipt off which is hereby acknowledged shall be made as set forth in Exhibit A attached hereto.

**Article 3 – Transfer of the Shares**

3.1 The transfer of the ownership of the Shares shall take place on the execution date of the present Agreement (hereinafter referred to as the "Transfer Date").

3.2 Following the transfer, the Buyer and the Seller shall sign any supplementary documents and take all necessary action as the Parties may reasonably require of each in order to effect the transactions envisaged by the Agreement.

3.3 This Agreement transfers the rights to the Shares and all rights and obligations attached thereto, including the right to dividends or other distributions attached to the Shares as from the Transfer Date.

3.4 The Seller and the Purchaser hereby appoint ___________________, in order to register the transfer of the Shares in the Company's shareholders' register and to proceed to any public disclosure of the transfer of the Shares as may be required by law.

**Article 4 – Representation and warranties of Seller**

The Seller hereby represents and warrants to the Buyer that:

4.1 The Seller is the legal and beneficial owner of the Shares and owns the Shares free and clear of all liens and encumbrances;

4.2 The Seller has all corporate power and authority to enter into this Agreement and to transfer full legal ownership of the Shares to the Buyer in accordance with this Agreement;

4.3 The execution and delivery of this Agreement by the Seller has been duly authorised by the proper corporate bodies and it constitutes a legally binding obligation to the Seller in accordance with its terms; and

4.4 The Shares are fully paid up and fully transferable.

4.5 The Company has at all times complied with, and is presently in compliance with, all applicable laws and regulations of Luxembourg as to the establishment, existence and operation of the Company

4.6 The Company has no pending suits or claims and has no outstanding contractual obligations or liabilities other than those disclosed in Exhibit B attached hereto.

4.7 The Company are unaware of any threatened, possible and/or potential claims against the Company or of any acts, events and/or other circumstances that could give rise to suits or claims against the Company or to contractual obligations or other liabilities of the Company other than those disclosed in Exhuibit B attached hereto.

**Article 5 - Authority**

In accordance with the Company's Articles, the transfer of Shares, the execution and delivery of, and the performance of the Company's obligations under, this Agreement, and all other transactions contemplated and permitted by this Agreement have been approved by Carlisle Investment Group S.à r.l. and such approval is hereby acknowledged in writing by Carlisle Investment Group S.à r.l.

**Article 6 – Confidentiality - Publicity**

6.1 It is agreed that other than in the case of information which must be disclosed as a result of any demand by any legal or administrative authority, no disclosure of information relating to any of the provisions of this Agreement may made public without the express consent of the Seller and the Purchaser.

6.2 The form and content of any such disclosure must be the subject of prior approval by the Purchaser and the Seller.

**Article 7 - Costs**

Each of the Parties to the present Agreement shall bear its own costs, charges and other expenses of whatever nature whether relating to the negotiation or the preparation or the performance of this Agreement.

**Article 8 - Waiver**

The non-exercise by a Party of a right under this Agreement shall not in any manner be interpreted as a waiver thereof and shall not in any manner affect the right of that Party to exercise such right or of any other rights.

**Article 9 - Severability**

In the event that any clause of this Agreement becomes void, unenforceable, illegal or inapplicable, the validity, legality and enforceability of the other terms of this Agreement shall not be affected nor shall one of the Parties be released from the performance of this Agreement. In any such event, the Parties will substitute a valid clause in the place of the invalid clause in the spirit and to the effect of the latter.

**Article 10 - Additional Acts**

Each of the Parties hereto shall deliver such further documents and agreements, and take such further actions as may be necessary and appropriate to carry out the purposes and intent of this Agreement.

**Article 11 - Amendment**

Any amendment to this Agreement must be drawn up in the form of a written amending agreement and signed by all the Parties.

**Article 12 - Counterparts**

This Agreement shall be executed in as many counterparts as there are Parties with a distinct interest, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

**Article 13 - Enforceability**

This Agreement shall be binding upon and enforceable by the Parties hereto and their respective successors.

**Article 14 – Governing Law**

This Agreement, and the rights, obligations and liabilities of each of the Parties hereunder, shall be governed by the laws of the state of New York.

**Article 15 - Jurisdiction**

Except as otherwise agreed in writing by the concerned Parties, any claims, disputes or disagreements arising under, in connection with or by reason of the relationships contemplated under this Agreement and any subsequent amendment thereof, including, without limitation, all controversies which may arise between each of the Parties concerning any transaction pursuant to this Agreement, the construction, performance or breach of this Agreement, shall be brought by any of the Parties in the state or federal courts of the state of New York and each of the Parties hereby

submits to the exclusive jurisdiction of such courts in any such actions or proceeding and waives any objection to the jurisdiction or venue of such courts.

**IN WITNESS WHEREOF**, the Parties hereto have duly executed this Agreement or have caused it to be duly executed as of the date first set forth above.

| | |
|---|---|
| **Mr. Philip Neuman** | For **Pillo Financial Consulting Corp**<br>By Jose Garcia, Director and Officer |
| The Buyer | The Seller |

In accordance with article 1690 of the Luxembourg civil code and with article 190 of the law of August 10, 1915 on commercial companies, as amended, the above-mentioned transfer of Shares is accepted by the Company, and any notification requirements with respect thereto are hereby waived.

The Company:

| | |
|---|---|
| **By** | **By** |
| Name: | Name: |
| Title: | Title: |