**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x

PHIL NEUMAN,

Plaintiff,

-against -

JOSE GARCIA, TIM MOL, VICTOR HEGGELMAN, CARLISLE ACQUISITION VEHICLE, LLC, PILLO PORTSMOUTH HOLDING COMPANY, LLC, PILLO FINANCIAL CONSULTING CORP., and CARLISLE INVESTMENT GROUP, S.À R.L.,

Defendants.

---------------------------------------------------x

Case No.: 1:20-cv-10723-PKC

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF**

Plaintiff PHIL NEUMAN alleges as follows for his first amended complaint against defendants JOSE GARCIA, TIM MOL, VICTOR HEGGELMAN, CARLISLE ACQUISITION VEHICLE, LLC, PILLO PORTSMOUTH HOLDING COMPANY, LLC, PILLO FINANCIAL CONSULTING CORP. and CARLISLE INVESTMENT GROUP, S.À R.L.:

## NATURE OF ACTION

1. This is an action for breach of contract, breach of fiduciary duty, conversion, conspiracy to commit conversion, replevin, fraud, conspiracy to commit fraud and fraudulent conveyance arising from agreements between Plaintiff Phil Neuman, on one hand, and Defendant Jose Garcia and his company Defendant Pillo Financial Consulting Corp. ("Pillo Financial"), on the other hand.

2. Pursuant to those agreements, which were executed on November 24, 2009 and April 9, 2010, Garcia sold Neuman a 50% ownership interest in two Luxembourg companies, which Garcia indirectly owned through Pillo Financial:

(i) Carlisle Management Company S.C.A. (the "Company"), a partnership that operates investment funds focused on the market for U.S. life insurance settlements; and

(ii) Defendant Carlisle Investment Group, S.à r.l. (the "General Partner"), a private liability company that manages the investment funds as the Company's General Partner.

3. Garcia represented that registration of Neuman's 50% interest in the General Partner in the shareholders' register of the General Partner, in the trade and companies register of Luxembourg with the Luxembourg competent authorities was unnecessary and should be delayed indefinitely due to tax and regulatory reasons. Garcia proposed instead that he would transfer to Neuman a 50% ownership interest in Pillo Financial, which was the registered owner of 100% of the General Partner, thereby protecting Neuman's 50% beneficial ownership interest in the General Partner.

4. On April 9, 2010, Garcia, Pillo Financial and Neuman executed the Stock Transfer Agreement annexed hereto as Exhibit 1, which provided for the transfer of 50% of the outstanding shares of Pillo Financial to Neuman. The Stock

Transfer Agreement also provides that New York law governs its interpretation and that the parties submit to the exclusive jurisdiction of New York state and federal courts for any disputes arising thereunder. Stock Transfer Agreement (Exhibit 1) at § 5. Pursuant to the agreement, Pillo Financial issued a stock certificate reflecting Neuman's 50% ownership interest, a copy of which is annexed hereto as Exhibit 2.

5. The Stock Transfer Agreement prohibits Pillo Financial from issuing new shares or transferring assets, including its ownership of the General Partner, without Neuman's written consent:

> … no new shares of Pillo [Financial] shall be issued, and no assets or property of Pillo [Financial] including its shares of Carlisle [Investment Group, S.à r.l.] will be transferred, assigned, sold or encumbered without the written consent of both Neuman and Garcia.

Stock Transfer Agreement (Exhibit 1) at § 3.

6. Notwithstanding this express provision and unbeknownst to Neuman, Garcia caused Pillo Financial to liquidate its ownership interest in the General Partner on May 11, 2011. Pillo Financial transferred 12,260 shares, representing an ownership interest of approximately 91%, to Defendant Pillo Portsmouth Holding Company, LLC ("Pillo Portsmouth"), a limited liability company owned exclusively by Garcia. Pillo Financial transferred the remaining 1,240 shares in the General Partner to Defendant Tim Mol. Although Garcia told Neuman that he had transferred

a portion of his ownership interest in the General Partner to Mol, Garcia actively concealed the fact that since May 11, 2011, Garcia has held his ownership interest in the General Partner through Pillo Portsmouth rather than through Pillo Financial. Garcia subsequently caused Pillo Portsmouth to transfer additional ownership interests in the General Partner to Mol and Defendants Victor Heggelman and Carlisle Acquisition Vehicle, LLC ("CAV").

7. Although Garcia told Neuman that he had transferred a portion of Garcia's interest in the General Partner to Mol, Heggelman and CAV, Garcia repeatedly assured Neuman over the years that he was still the beneficial owner of a 50% interest in the General Partner and that interest was secured through Neuman's ownership interest in Pillo Financial, which was the registered owner of at least 70% of the outstanding shares of the General Partner. Garcia and Mol actively concealed the fact that Pillo Financial no longer held any interest in the General Partner.

8. Garcia and Mol also consistently represented to Neuman that because the General Partner managed the Company's investment funds in return for compensation roughly equal to costs, the General Partner did not earn profits or make distributions to its shareholders. In early 2019, however, Neuman noticed that the Company's annual financial statements appeared to show that fees in excess of management costs were being paid to the General Partner.

9. When Neuman inquired about those fees, Mol and Garcia told him that although Luxembourg regulations required such fees to be paid to the General Partner, any "profits" would be "reinvested" in the Company in a manner that complied with Luxembourg law and resulted "net-zero" profits to the General Partner. Neuman was satisfied by this response for two reasons: (i) he trusted Mol and Garcia; and (ii) in the event the General Partner was earning profits, he was entitled to 50% of such profits in light of his indirect 50% ownership interest in the General Partner through Pillo Financial.

10. By fall 2020, however, Neuman became aware of certain irregularities in the General Partner's management of the Company's investment funds, including a severe liquidity crisis threatening the funds. Conducting due diligence, Neuman learned for the first time that (i) Pillo Financial breached the Stock Purchase Agreement by liquidating its interest in the General Partner without Neuman's knowledge or consent; and (ii) Garcia now held his interest in the General Partner through Garcia's limited liability company, Pillo Portsmouth, not Pillo Financial.

11. Defendants Mol, Garcia and Heggelman are managing directors of the General Partner and have actively conspired to defraud Neuman of the rights and benefits of his indirect 50% ownership of the General Partner. Upon information and belief, CAV has participated in this conspiracy to defraud Neuman.

12. Neuman now brings this action to recover damages and declaratory and injunctive relief, including a full accounting of the General Partner, an order setting aside Pillo Financial's fraudulent conveyance of its ownership interest in the General Partner to Pillo Portsmouth, and an injunction precluding the General Partner from taking any further action without Neuman's written consent.

**THE PARTIES**

13. Plaintiff Phil Neuman is a citizen of Nevada.

14. Defendant Jose Garcia is a citizen of Spain who resides in Luxembourg.

15. Defendant Tim Mol is a citizen of the Netherlands who resides in Luxembourg.

16. Defendant Victor Heggelman is a citizen and resident of Luxembourg.

17. Defendant Carlisle Acquisition Vehicle, LLC (previously defined as "CAV") is a Delaware limited liability company whose members are (i) Northern Lights Capital Partners (UK) Ltd., a limited company organized under the laws of the United Kingdom that maintains its principal place of business in the United Kingdom;[1] and (ii) Northern Lights Midco LLC, a Delaware limited liability

[1] A U.K. limited company is treated as a corporation for the purposes of diversity subject matter jurisdiction. *See*, *e.g.*, *SHLD, LLC v. Hall*, 2015 WL 5772261, at *2 (S.D.N.Y. Sept. 29, 2015).

company whose sole member is Aurora Trust, a trust established under the laws of Australia.

18. Defendant Pillo Portsmouth Holding Company, LLC (previously defined as "Pillo Portsmouth") is a Delaware limited liability company whose sole member is Jose Garcia, a citizen of Spain.

19. Defendant Pillo Financial Consulting Corp. (previously defined as "Pillo Financial") is a corporation organized under the laws of the District of Columbia that, upon information and belief, maintains its principal place of business in the District of Columbia.

20. Defendant Carlisle Investment Group, S.à r.l., (previously defined as the "General Partner") is a company organized under the laws of Luxembourg as a "*société à responsabilité limitée*"[2] that maintains its principal place of business in Luxembourg and whose members are (i) Tim Mol, a citizen of the Netherlands; (ii) Victor Heggelman, a citizen of Luxembourg; (iii) Carlisle Acquisition Vehicle, LLC, a citizen of Delaware, the United Kingdom and Australia; and (iv) Pillo Portsmouth Holding Company, LLC, a citizen of Delaware and Spain.

[2] An "S.à r.l." may be treated as a corporation or as a limited liability company for diversity subject matter jurisdiction. *See*., *e.g*., *Burge v. Sunrise Medical (US) LLC*, 2013 WL 6467994, *2 (D. Col. December 9, 2013)).

## JURISDICTION AND VENUE

21. This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(3) because this is a civil action where the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different States and in which citizens or subjects of a foreign state are additional parties.

22. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND

### A. Garcia Solicits Neuman's Partnership in Luxembourg-Based Life Settlement Investment Funds.

23. In the fall of 2009, Garcia contacted Neuman about the possibility of investing and participating in his new business venture: the formation of investment funds based in Luxembourg that would focus on the U.S. market for life insurance settlements. A life settlement is a transaction under which a life insurance policy owner sells the policy to a third party for a fixed sum less than the death benefit but generally greater than the policy's cash surrender value. The buyer is responsible for future premiums but is also entitled to the death benefit when the insured dies. Such transactions can be bundled and traded on secondary or tertiary markets.

24. Neuman agreed to participate and invest in return for 50% ownership

of the business, which Garcia represented would be structured as a Luxembourg partnership whose General Partner would manage the investment funds. Garcia had already formed the Luxembourg partnership limited by shares, Carlisle Management Company S.C.A. (previously defined as the "Company"), and its General Partner, Carlisle Investment Group, S.à r.l. (previously defined as the "General Partner").

25. On November 24, 2009, Neuman and Garcia met in New York City where they executed an agreement memorializing their 50-50 partnership in the Company and the General Partner. That agreement is annexed hereto as Exhibit 3.

**B. The Stock Purchase Agreement.**

26. The November 24, 2009 agreement contemplated that additional agreements would be executed to reflect Neuman's ownership interest in the Company and the General Partner, which would be registered "in the method advised by the Company's tax advisor in Luxembourg as to minimize the effect on the Company's tax and regulatory status." In early 2010, Garcia told Neuman that registration of Neuman's ownership interest in the General Partner in the shareholders' register of the General Partner, in the trade and companies register of Luxembourg and with the Luxembourg competent authorities should be delayed indefinitely due to such tax and regulatory issues. Garcia represented that no such

tax or regulatory issues prevented registration of Neuman's partnership interest in the Company with Luxembourg authorities.

27. Garcia represented that his ownership interests in the Company and the General Partner were held indirectly through Pillo Financial. Garcia proposed that because Neuman's 50% interest in the General Partner would not be registered in the shareholders' register of the General Partner, in the trade and companies register of Luxembourg and with Luxembourg competent authorities, Neuman's interest in the General Partner could be secured by transferring a 50% interest in Pillo Financial to Neuman. In contrast, Neuman's 50% interest in the Company would be registered in the shareholders' register of the Company and with the Luxembourg competent authorities and there was no reason for Neuman to indirectly hold his interest in the Company through Pillo Financial. For that reason, Garcia told Neuman that he would transfer Pillo Financial's interest in the Company, which would be reduced to 50% after Neuman's interest in the Company was registered, to another Garcia-controlled company.

28. To implement these understandings, Garcia and Neuman executed the following written agreements on April 9, 2010:

(i) The Stock Purchase Agreement annexed hereto as Exhibit 1, under which Garcia transferred a 50% ownership interest in Pillo Financial to Neuman with the promise that

Pillo Financial's ownership interest in the General Partner would not be transferred without Neuman's consent;

(ii) The Pillo Financial Stock Certificate annexed hereto as Exhibit 2, which reflected Neuman's 50% ownership interest in that company;

(iii) A Share Sale and Purchase Agreement annexed hereto as Exhibit 4, which transferred 50% of the outstanding shares of the General Partner from Pillo Financial to Neuman; and

(iv) A Share Sale and Purchase Agreement annexed hereto as Exhibit 5, which transferred 50% of the outstanding shares of the Company from Pillo Financial to Neuman.

29. Each of these agreements contains a choice of law provision providing that the agreement is governed by New York law. The Stock Purchase Agreement contains a choice of forum provision providing that the New York is the exclusive jurisdictions for any disputes "arising under or in connection with" that agreement.

**C. Neuman Reduces His Ownership Interest in the Company to 20% But Retains His 50% Interest in the General Partner.**

30. By the spring of 2012, disputes between Neuman and Garcia had arisen regarding management and control of the Company and its investment funds. In April 2012, they agreed to resolve those disputes based on the following terms:

(i) Neuman would reduce his ownership interest in the Company from 50% to 20% in return for a cash payment and other consideration; and

(ii) Neuman would no longer actively participate in the management of the Company, but he would retain his 50% interest in the General Partner to retain "veto" power over management decisions to which he disagreed.

31. To implement this understanding, Neuman, Garcia and Mol executed an agreement dated April 27, 2012 under which Neuman's ownership interest in the Company was reduced to 20% in return for certain payments and other consideration. That agreement, which is expressly limited to "existing agreements with regard to Carlisle Management Company SCA," *i.e.*, the Company, is annexed hereto as Exhibit 6.

32. When the April 27, 2012 agreement was executed, Neuman mistakenly believed that Garcia had registered Neuman's 50% ownership interest in the Company in the shareholders' register of the Company and with the Luxembourg competent authorities. In fact, Garcia had not done so.

33. In March 2013, Garcia conceded to Neuman that he had not registered Neuman's ownership interest in the Company in the shareholders' register of the Company and with the Luxembourg competent authorities and that in order to do so a new share purchase agreement had to be executed. Garcia explained that Pillo Financial had transferred its ownership interest in the Company to Pillo Portsmouth. Consequently, Pillo Financial no longer owned any interest in the Company and

therefore could not perform its obligation under the April 9, 2010 Share Sale and Transfer Agreement annexed hereto as Exhibit 5 to transfer a 50% ownership interest in the Company to Neuman. And because Neuman had agreed to reduce his ownership interest in the Company to 20%, transferring a 50% ownership interest was no longer necessary.

34. Garcia told Neuman that the most efficient means of registering Neuman's 20% interest in the Company was to execute a new share purchase agreement with Pillo Portsmouth, which was the new registered owner of Garcia's interest in the Company. After that agreement was executed, Neuman's ownership share could be registered in the Company's shareholders' register and with the Luxembourg competent authorities. Garcia also assured Neuman that Pillo Financial still owned his interest in the General Partner and that Neuman's 50% interest in the General Partner was therefore secure since Neuman owned 50% of Pillo Financial.

35. On March 22, 2013, Pillo Portsmouth and Neuman entered into a Share Purchase Agreement under which Pillo Portsmouth transferred a 20% ownership interest in the Company to Neuman. That agreement is annexed hereto as Exhibit 7.

36. Mol thereafter contacted Neuman to take the necessary steps to register Neuman's 20% interest in the Company and, upon information and belief, that ownership interest was registered in the shareholders' register of the Company and

with the Luxembourg competent authorities. During telephone conversations between Neuman and Mol to accomplish that task over the summer of 2013, Neuman mentioned that he was still the beneficial owner of 50% of the General Partner pursuant to the April 9, 2010 Share Sale and Purchase Agreement with Pillo Financial (Exhibit 4) and the April 9, 2010 Stock Transfer Agreement (Exhibit 1).

37. Mol asserted that Neuman might be mistaken because the April 27, 2012 agreement, to which Mol was a party, provided that "[a]ll prior agreements between [Garcia] and [Neuman] are superseded by this memo of agreement." *See* April 27, 2012 Agreement (Exhibit 6) at ¶ 1. Neuman pointed out, however, that the April 27, 2012 Agreement was restricted to "existing agreements [between Neuman and Garcia] *with regard to Carlisle Management Company SCA*" and therefore did not apply to agreements concerning the General Partner. *Id*. at WHEREAS clause (emphasis added). Neuman also pointed out that his beneficial ownership interest in the General Partner arose from his April 9, 2010 Share Purchase Agreement with *Pillo Financial* (annexed hereto as Exhibit 4) and therefore did not constitute an agreement between him and Garcia. And Neuman also pointed out that when Garcia approached Neuman in March 2013 to address the need for a new share purchase agreement with Pillo Portsmouth to reflect Neuman's 20% interest in the Company, Garcia had expressly confirmed that Neuman still owned a 50% beneficial interest

in the General Partner through his 50% ownership of Pillo Financial, which Garcia represented to still be the registered owner of shares in the General Partner.

38. Mol agreed with Neuman's analysis and apologized for his confusion, which Mol explained arose because Mol was not a party to, and was unfamiliar with the terms of, the April 9, 2010 agreements reflecting Neuman's 50% beneficial interest in the General Partner.

**D. Neuman Discovers the Fraud.**

39. For years, Neuman trusted Garcia and Mol to manage the Company and to protect his interests. In early 2019, however, Neuman noticed that some of the financial statements appeared to indicate that the General Partner was earning management fees in excess of costs. When Neuman inquired about these fees, Mol and Garcia falsely represented that Luxembourg regulations required the General Partner to earn these fees, but that the fees would be "reinvested" into the Company so that the General Partner would not retain significant profits and the policy of no distributions to General Partner shareholders would continue.

40. Neuman accepted these representations because he trusted Garcia and Mol. He also believed that even if the General Partner earned and distributed profits, Garcia would have to distribute 50% of the profits to Neuman based on Neuman's

50% interest in the General Partner, which Neuman owned through his 50% ownership of Pillo Financial.

41. By the fall of 2020, however, Neuman became aware of irregularities in the Company's management, including a severe liquidity crisis facing the Company's primary investment fund, the Luxembourg Life Fund, Long Term Growth Fund. Neuman retained counsel, including Luxembourg counsel, to investigate and learned for the first time that Pillo Financial had liquidated its ownership interest in the General Partner as of May 11, 2011 and that Garcia owned his interest in the General Partner since that date through Pillo Portsmouth.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Breach of Contract – against Garcia and Pillo Financial)

42. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 41.

43. On or about April 9, 2010, Neuman, Garcia and Pillo Financial entered into the Stock Purchase Agreement. That agreement prohibits Pillo Financial from issuing new shares or transferring assets, including its ownership of the General Partner, without Neuman's written consent:

> … no new shares of Pillo [Financial] shall be issued, and no assets or property of Pillo [Financial] including its shares of

> Carlisle [Investment Group, S.à r.l.] will be transferred, assigned, sold or encumbered without the written consent of both Neuman and Garcia.

Stock Transfer Agreement (Exhibit 1) at § 3.

44. Neuman performed all of his obligations under the Stock Transfer Agreement.

45. On or about May 11, 2011, Garcia caused Pillo Financial to liquidate its ownership interest in the General Partner without Neuman's knowledge or consent. Garcia and Pillo Financial breached the Stock Transfer Agreement by liquidating Pillo Financial's ownership interest in the General Partner.

46. Garcia and Pillo Financial actively concealed their transfer of Pillo Financial's interest in the General Partner from Neuman. In March 2013, when Garcia took steps to register Neuman's ownership interest in the Company in the shareholders' register of the Company and with the Luxembourg competent authorities, Garcia falsely told Neuman that (i) Pillo Financial was still the registered owner of Garcia's and Neuman's ownership interest in the General Partner; and (ii) Neuman's 50% ownership interest in Pillo Financial adequately assured Neuman's 50% beneficial interest in the General Partner. Garcia made those false representations in telephone calls that took place in March 2013 when Neuman was in New York City and Garcia was in Luxembourg.

47. In the spring of 2019, Garcia and Mol invited Neuman to attend a dinner for the Company's management in Europe. At that dinner, both Garcia and Mol acknowledged Neuman as the 50% beneficial owner of the General Partner. Garcia falsely represented to Neuman at that dinner that while Garcia's interest in the Company was held through Pillo Portsmouth, Garcia's and Neuman's interest in the General Partner were held through Pillo Financial.

48. Garcia made those false representations with knowledge of their falsity for the purpose of preventing Neuman from enforcing his contractual rights.

49. Because Pillo Financial's liquidation of its ownership interest in the General Partner has deprived Neuman of his 50% beneficial ownership interest in the General Partner, Neuman has no adequate remedy at law to compensate him for Garcia's and Pillo Financial's breach of the Stock Purchase Agreement.

50. Neuman has suffered irreparable damage as a result of Pillo Financial's liquidation of its ownership interest in the General Partner and he is entitled to specific performance of the Stock Purchase Agreement in the form of a judgment setting aside the liquidation and enjoining Pillo Portsmouth to transfer its ownership interest in the General Partner to Pillo Financial.

**SECOND CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty – against Garcia)**

51. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 50.

52. The agreements dated November 24, 2009 and April 9, 2010, including the Stock Purchase Agreement, created a fiduciary relationship between Garcia and Neuman due to their joint ownership of the Company and the General Partner.

53. Garcia owed Neuman fiduciary duties to comply with his obligations under those agreements, to provide accurate information regarding the operations and ownership of the Company and the General Partner, and to refrain from elevating Garcia's interests over Neuman's interests with respect to the Company and the General Partner.

54. Garcia breached his fiduciary duties to Neuman by causing Pillo Financial on May 11, 2011 to liquidate its interest in the General Partner to transfer Garcia's ownership interest in the General Partner to Pillo Portsmouth without Neuman's knowledge and consent. Garcia continued to breach those duties by falsely representing to Neuman in March 2013 and the spring of 2019 that Pillo Financial was still the registered owner of Garcia's interest in the General Partner when, in fact, Pillo Financial had liquidated its interest in the General Partner and

Garcia owned his interest in the General Partner through Pillo Portsmouth.

55. Because Pillo Financial's liquidation of its ownership interest in the General Partner has deprived Neuman of his 50% beneficial ownership interest in the General Partner, Neuman has no adequate remedy at law to compensate him for Garcia's breach of his fiduciary duties.

**THIRD CLAIM FOR RELIEF**

**(Breach of Fiduciary Duty –
against Garcia, Pillo Portsmouth, Mol, Heggelman and CAV)**

56. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 55.

57. Pillo Portsmouth, Mol, Heggelman and CAV, as registered owners of the General Partner, and Garcia, through his indirect beneficial ownership interest in the General Partner, owed fiduciary duties to Neuman arising from Neuman's beneficial ownership interest of 50% of the General Partner.

58. Upon information and belief, the General Partner has earned profits over the years and distributed those profits to its registered owners, Pillo Portsmouth, Mol, and Heggelman and to Garcia, through his ownership interest in Pillo Portsmouth.

59. Upon information and belief, the registered owners of the General Partner, including Pillo Portsmouth, Mol, Heggelman, CAV and Garcia, indirectly through Pillo Portsmouth, have excluded Neuman from any distribution of profits despite their knowledge that Neuman was the beneficial owner of a 50% interest in the General Partner.

60. Pillo Portsmouth, Garcia, Mol, Heggelman have breached their fiduciary duties by excluding Neuman from distribution of profits and by falsely representing that the General Partner has neither earned nor distributed profits.

61. As a proximate cause of these breaches, Neuman has incurred monetary damages in an amount to be proven at trial and is entitled to a full accounting of the finances of the General Partner from its inception to date.

**FOURTH CLAIM FOR RELIEF**
**(Conversion – Against Garcia, Pillo Financial and Pillo Portsmouth)**

62. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 61.

63. Neuman has the right to a 50% beneficial interest in the General Partner arising from (i) the April 9, 2010 Share Sale and Transfer Agreement between Pillo Financial and Neuman annexed hereto as Exhibit 4, which transferred a 50% interest in the General Partner to Neuman; and (ii) the Stock Purchase Agreement annexed

hereto as Exhibit 1, which transferred a 50% interest in Pillo Financial to Neuman while Neuman's 50% interest in the General Partner was not registered in the shareholders' register of the General Partner, in the trade and companies register of Luxembourg and with the Luxembourg competent authorities.

64. Garcia caused Pillo Financial to liquidate its interest in the General Partner and to transfer Neuman's 50% beneficial interest in the General Partner to Pillo Portsmouth without Neuman's knowledge or consent.

65. Because Garcia did not own a majority of Pillo Financial, Garcia did not have authority to cause Pillo Financial to transfer Neuman's 50% beneficial interest in the General Partner to Pillo Portsmouth without Neuman's consent. And the Stock Transfer Agreement prohibited Pillo Financial from making that transfer.

66. Upon information and belief, Garcia is the only owner of, and exercises exclusive control over, Pillo Portsmouth.

67. Pillo Portsmouth therefore knew that Pillo Financial's transfer of Neuman's 50% beneficial interest in the General Partner was unauthorized. Pillo Portsmouth nevertheless accepted that transfer and subsequently took steps to register its interest in the General Partner in the shareholders' register of the General Partner, in the trade and companies register of Luxembourg and with the Luxembourg competent authorities.

68. Pillo Financial's transfer of Neuman's 50% beneficial interest in the General Partner and Pillo Portsmouth's acceptance of that transfer constitute interference with Neuman's beneficial ownership of 50% of the General Partner. The transfer of Neuman's interest in the General Partner by Pillo Financial and Pillo Portsmouth's acceptance of that transfer deprived Neuman of his 50% beneficial ownership interest in the General Partner, thereby constituting a wrongful conversion of Neuman's personal property.

69. Garcia caused Pillo Financial to transfer Neuman's 50% interest in the General Partner and caused Pillo Portsmouth to accept that transfer. Garcia thereby deprived Neuman of his 50% beneficial ownership interest in the General Partner, thereby constituting a wrongful conversion of Neuman's personal property.

70. Garcia, Pillo Financial and Pillo Portsmouth acted intentionally when they caused Neuman's 50% beneficial interest in the General Partner to be transferred from Pillo Financial to Pillo Portsmouth.

71. The wrongful conversion of Neuman's 50% interest in the General Partner by Garcia, Pillo Financial and Pillo Portsmouth caused Neuman to incur substantial damages and special damages in an amount in excess of $10 million.

## FIFTH CLAIM FOR RELIEF

### (Conspiracy to Commit Conversion – against Garcia, Mol, Heggelman, CAV, Pillo Financial and Pillo Portsmouth)

72. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 71.

73. Garcia, Pillo Financial and Pillo Portsmouth wrongfully converted Neuman's ownership interest in the General Partner as set forth, *supra*, at ¶¶ 62-71.

74. Garcia, Mol, Heggelman, Pillo Financial and Pillo Portsmouth and, upon information and belief, CAV, agreed to take all steps necessary to deprive Neuman of his 50% beneficial interest in the General Partner or continue to deprive Neuman of his 50% beneficial interest in the General Partner.

75. Garcia, Mol, Heggelman, Pillo Financial, Pillo Portsmouth and CAV each committed an overt act in furtherance of that agreement. Garcia, Pillo Financial and Pillo Portsmouth wrongfully converted Neuamn's interest in the General Partner. Heggelman and CAV knew of this wrongful conversion but failed to disclose it to Neuman despite their fiduciary duties to do so.

76. Garcia, Mol, Heggelman, Pillo Financial, Pillo Portsmouth and, upon information and belief, CAV, participated in a plan to deprive, and therefore wrongfully convert, Neuman of his 50% beneficial interest in the General Partner.

77. As a proximate cause of this conspiracy, Neuman sustained substantial damages to be proven at trial in excess of $10 million dollars.

**SIXTH CLAIM FOR RELIEF**

**(Replevin – against Pillo Portsmouth)**

78. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 77.

79. Neuman has the right to a 50% beneficial interest in the General Partner arising from (i) the April 9, 2010 Share Sale and Transfer Agreement between Pillo Financial and Neuman annexed hereto as Exhibit 4, which transferred a 50% interest in the General Partner to Neuman; and (ii) the Stock Purchase Agreement annexed hereto as Exhibit 1, which transferred a 50% interest in Pillo Financial to Neuman while Neuman's 50% interest in the General Partner was not registered in the shareholders' register of the General Partner, in the trade and companies register of Luxembourg and with the Luxembourg competent authorities.

80. Pillo Portsmouth accepted the transfer by Pillo Financial of Neuman's 50% beneficial interest in the General Partner on or about May 11, 2011, knowing that Neuman had not consented to that transfer.

81. Pillo Portsmouth has no right to possess Neuman's 50% ownership interest in the General Partner because (i) Pillo Financial was not authorized, and

did not have the right to, transfer Neuman's 50% beneficial interest in the General Partner to Pillo Portsmouth; and (ii) Pillo Portsmouth knew that Pillo Financial was not authorized and did not have the right to transfer Neuman's 50% beneficial interest in the General Partner.

82. Neuman is therefore entitled to Pillo Portsmouth's return of his 50% beneficial interest in the General Partner.

**SEVENTH CLAIM FOR RELIEF**

**(Fraud – against Garcia, Mol, Pillo Financial and Pillo Portsmouth)**

83. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 82.

84. Garcia, Mol, Pillo Financial and Pillo Portsmouth made false representations to Neuman as set forth, *supra*, at ¶¶ 8, 37, 39, 46, 47, 54 and 60.

85. Garcia, Mol, Pillo Financial and Pillo Portsmouth made those representations knowing they were false with the intent of inducing Neuman to refrain from taking any steps to enforce his contractual rights to his beneficial ownership of 50% of the General Partner.

86. Neuman reasonably relied on those misrepresentations and thereby failed to enforce his contractual rights to his beneficial ownership of 50% of the General Partner..=

87. As a proximate cause of these misrepresentations, Neuman sustained damage to be proven at trial of at least $1 million dollars in addition to other special damages to be proven at trial.

**EIGHTH CLAIM FOR RELIEF**

**(Conspiracy to commit fraud – against Garcia, Mol, Heggelman, CAV, Pillo Financial and Pillo Portsmouth)**

88. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 87.

89. Garcia, Mol, Pillo Financial and Pillo Portsmouth Garcia, Mol, Pillo Financial and Pillo Portsomouth made fraudulent representations to Neuman, upon which Neuman reasonably relied to not enforce his contractual rights to 50% of the beneficial ownership of the General Partner as set forth, *supra*, at ¶¶ 83-87.

90. Garcia, Mol, Heggelman, Pillo Financial and Pillo Portsmouth and, upon information and belief, CAV, agreed that these fraudulent representations would be made in an effort to induce Neuman not to enforce his rights to 50% of the beneficial ownership of the General Partner.

91. Garcia, Mol, Heggelman, Pillo Financial, Pillo Portsmouth and CAV each committed an overt act in furtherance of that agreement. Garcia, Mol, Pillo Financial and Pillo Portsmouth made the fraudulent misrepresentations. Upon

information and belief, CAV knew of these fraudulent misrepresentations but failed to disclose them to Neuman despite its fiduciary duty to do so.

92. Garcia, Mol, Heggelman, Pillo Financial, Pillo Portsmouth and, upon information and belief, CAV, intentionally participated in a plan to fraudulently induce Neuman to fail to enforce his rights to 50% of the beneficial interest in the General Partner.

93. As a proximate cause of this conspiracy, Neuman sustained substantial damages to be proven at trial in excess of $10 million dollars.

**NINTH CLAIM FOR RELIEF**

**(Fraudulent Conveyance –**
**against Garcia Pillo Financial and Pillo Portsmouth)**

94. Neuman repeats and realleges each of the allegations set forth in paragraphs 1 through 93.

95. Garcia and Pillo Financial fraudulently conveyed Pillo Financial's interest in the General Partner to Pillo Portsmouth for the purpose of depriving Neuman of his 50% beneficial interest in the General Partner.

96. Pillo Portsmouth accepted that transfer and subsequently registered its interest in the General Partner in the shareholders' register of the General Partner, in the trade and companies register of Luxembourg and with the Luxembourg

competent authorities for the purpose of depriving Neuman of his 50% beneficial interest in the General Partner.

97. Garcia, Pillo Financial, and Pillo Portsmouth acted intentionally to fraudulently deprive Neuman of his 50% beneficial interest in the General Partner.

98. Neuman is entitled to have the fraudulent conveyance of his 50% beneficial interest in the General Partner from Pillo Financial to Pillo Portsmouth set aside as well as for damages arising out of the wrongful conduct of Garcia, Pillo Financial and Pillo Portsmouth.

**JURY DEMAND**

99. Plaintiffs demand a jury on all issues that may be tried by jury.

WHEREFORE, Neuman demands judgment as follows:

(i) damages in an amount to be proven at trial of at least $1 million;

(ii) a declaratory judgment that Garcia and Pillo Financial breached the Stock Transfer Agreement by liquidating Pillo Financial's interest in the General Partner and transferring Neuman's 50% beneficial interest in the General Partner to Pillo Portsmouth;

(iii) an order setting aside Pillo Financial's fraudulent conveyance of Neuman's 50% beneficial interest in the General Partner to Pillo Portsmouth;

(iv) an injunction directing Garcia and Pillo Portsmouth to transfer a 50% interest in the General Partner to Neuman

and to take all steps necessary to register Neuman's interest in the General Partner in the shareholders' register of the General Partner, in the trade and company register of Luxembourg and with the Luxembourg competent authorities;

(v) a full accounting of the General Partner, its finances and all distributions made to its shareholders from its inception to the present;

(vi) an injunction prohibiting the General Partner from taking any action without Neuman's consent in light of his 50% beneficial interest in the General Partner;

(vii) costs, including reasonable attorneys' fees, incurred in this action; and

(viii) such other relief as this Court deems just.

Dated: January 6, 2020

THE GRIFFITH FIRM

*/s/ Edward Griffith*

By:______________________________

EDWARD GRIFFITH, ESQ.
45 Broadway, Suite 2200
New York, New York 10006
(646) 645-3784 (mobile)
eg@thegriffithfirm.com

*Counsel for Plaintiff Phil Neuman*