Arent Fox

Arent Fox LLP / Attorneys at Law
Boston / Los Angeles / New York / San Francisco / Washington, DC

January 21, 2021

**Jule Rousseau**
Partner
212.484.3948 DIRECT
212.484.3990 FAX
jule.rousseau@arentfox.com

VIA ECF

Hon. P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10017-1312

Re: *Neuman v. Garcia, et al.*, Case No.1:20-cv-10723

Dear Judge Castel:

This firm represents defendant Pillo Portsmouth Holding Company, LLC ("Pillo Portsmouth") in the above-referenced action.[1] The next scheduled conference with the Court is an Initial Pretrial Conference on February 22, 2021. The purpose of this letter is to advise the Court, pursuant to Rule 3(A) of Your Honor's Individual Practices, that Pillo Portsmouth intends to file a Motion to Dismiss the First Amended Complaint (the "FAC"). This letter describes the anticipated factual and legal basis for that Motion, and to propose a briefing schedule for it.

As explained below, Pillo Portsmouth intends to move to dismiss this case because it does not belong before this Court on both procedural and substantive grounds, and for several legal and prudential reasons. The underlying dispute concerns plaintiff Phil Neuman's alleged ownership interest in two companies, both of which are based in, and organized under the laws of, the Grand Duchy of Luxembourg. In sum and substance, the FAC alleges that defendants have fraudulently deprived Neuman of his purported interest in one of those Luxembourg companies, Carlisle Investment Group, S.à.r.l ("CIG"). All of those Defendants are either foreign companies, foreign nationals, or – like Pillo Portsmouth – domestic entities whose owners are foreign individuals and entities. While the particulars of each Defendant vary, they all share a nonexistent connection to New York.

[1] This firm also represents five other named defendants who have not been properly served: Pillo Financial Consulting Corp., Carlisle Investment Group, S.à.r.l., Jose Garcia, Tim Mol, and Victor Heggelman (the "Luxembourg Defendants"). Of the six defendants this firm represents, only Pillo Portsmouth has been properly served, and this letter is solely on behalf of Pillo Portsmouth. Service on the Luxembourg Defendants is the subject of an Order to Show Cause issued by the Court on January 14, 2021 (Dkt. 35). The remaining defendant, Carlisle Acquisition Vehicle, LLC ("CAV"), has also been served, and is represented by other counsel.

The personal jurisdiction allegations of the FAC are even thinner than the subject matter jurisdiction allegations that the Court *sua sponte* found deficient (Dkt. 22). In fact, the allegations of the FAC demonstrate that there is no present connection to New York sufficient to establish personal jurisdiction over any defendant. Indeed, FAC Exhibits 1, 3, 4, 5, which reference New York as a forum, were expressly superseded by FAC Exhibit 6: "All prior agreements between [Jose Garcia] and [Phil Neuman] are hereby superseded by this memo of agreement." FAC Exhibit 7 then provides that any action "shall be brought by any of the Parties in the courts of Luxembourg-City, Grand Duchy of Luxembourg and each of the Parties hereby submits to the exclusive jurisdiction of such courts . . . ." This is consistent with the relocation of the business center of defendants' operations to the Grand Duchy of Luxembourg more than eight years ago.

Thus, even if this Court did conclude that it has personal jurisdiction over all of the defendants, the *forum non conveniens* doctrine would point to the courts of Luxembourg, not New York, as the proper forum to hear this dispute.[2] Moreover, the claims in the FAC – which arise from a superseded and decade-old agreement, and an alleged breach of it that occurred more than nine years ago – are time-barred, facially deficient, and subject to dismissal under Rules 9 and 12.

**Background**

The nine-count FAC is rooted in an allegation that Neuman – through two now-superseded agreements entered into in 2009 and 2010 – is the owner of a 50% ownership interest in a Luxembourg company, defendant Carlisle Investment Group, S.à.r.l. (previously defined as "CIG," referred to in the FAC as the "General Partner").[3] In sum and substance, the FAC alleges that defendants Garcia and Pillo Financial breached those now-superseded agreements in 2013 by transferring Neuman's interest in CIG without his knowledge, and subsequently conspired with other defendants to conceal that alleged misdeed from Neuman.

The allegations in the FAC that are most relevant to the Motion to Dismiss that Pillo Portsmouth intends to file are as follows:[4]

- Plaintiff Neuman is a citizen of Nevada. FAC ¶ 13.

---

[2] Indeed, Neuman has already availed himself of the Luxembourg courts in a recently filed action against Mr. Garcia.

[3] The agreements are Exhibits 1, 3, 4, 5, 6, 7 to the FAC.

[4] Pillo Portsmouth will dispute some of these allegations at the appropriate time, but for the purposes of the present Motion, will accept them as true.

- Defendant Pillo Portsmouth is a Delaware limited liability company whose sole member is Jose Garcia. FAC ¶ 18.

- Defendant CIG, the ownership of which is the central dispute that animates the FAC, is a Luxembourg company, whose members are Mol, Heggelman, CAV, and Pillo Portsmouth. FAC ¶ 20.

- The individual defendants – Jose Garcia ("Garcia"), Tim Mol ("Mol"), and Victor Heggelman ("Heggelman") – are residents of Luxembourg; they are citizens of Spain, the Netherlands, and Luxembourg, respectively. FAC ¶¶ 14-16.

- Defendant CAV is a Delaware LLC whose ultimate owners are a United Kingdom company and an Australian company. FAC ¶ 17.

- In an agreement dated November 24, 2009 (the "Nov. 2009 Agreement," FAC Ex. 3), Neuman and Garcia "memorializ[ed] their 50-50 partnership in" CIG and another Luxembourg company, Carlisle Management Company SCA ("Carlisle SCA," referred to in the FAC as "the Company").[5] Pursuant to the Nov. 2009 Agreement, Neuman did not acquire 50% of CIG, but instead acquired a 50% ownership interest in Pillo Financial Consulting Corp. ("Pillo Financial"), which in turn owned 100% of CIG. FAC ¶¶ 2, 3, 25.

- To "implement [the] understandings" in the Nov. 2009 Agreement, Garcia and Neuman entered into three agreements in April 2010: (1) a Stock Transfer Agreement (the "April 2010 Stock Transfer Agreement," FAC Ex. 1); (2) a Share Sale and Purchase Agreement, pursuant to which Neuman acquired 6,250 shares of CIG from Pillo Financial (the "April 2010 SSA," FAC Ex. 4), and (3) a Share Purchase Agreement, pursuant to which Neuman acquired 61,500 shares of Carlisle SCA from Pillo Financial (the "April 2010 SPA," FAC Ex. 5). FAC ¶¶ 4, 28-29.

- On May 11, 2011, Garcia caused Pillo Financial to transfer its ownership interest in CIG to Pillo Portsmouth, a single-member LLC owned exclusively by Garcia. This transfer was a breach of the Stock Transfer Agreement, which prohibited such transfer. Garcia and Pillo Financial concealed the transfer from Neuman, and Garcia "falsely told" Neuman during telephone calls in March 2013 that Pillo Financial was still the owner of CIG. FAC ¶¶ 5, 6, 43-46.

---

[5] Although the Company is not a party to this litigation, it is referenced extensively in the FAC and the accompanying exhibits.

- By the spring of 2012, "disputes between Neuman and Garcia had arisen regarding management and control of [Carlisle SCA] and its investment funds." Neuman and Garcia reached an agreement to resolve those disputes, memorialized in an April 27, 2012 Agreement (the "Settlement Agreement," FAC Ex. 6), which expressly and unconditionally states that: "All prior agreements between [Garcia] and [Neuman] are hereby superseded by this memo of agreement." The Settlement Agreement also recites that Neuman "desires to obtain residency in Luxembourg;" and Neuman "will receive 20% of shares in [Carlisle SCA]." FAC ¶¶ 30-31. It is apparent that by 2012, the parties' interest and operations had shifted to Luxembourg.

- On March 22, 2013, Pillo Portsmouth and Neuman entered into a Share Purchase Agreement, pursuant to which Neuman acquired 24,800 shares of Carlisle SCA from Pillo Portsmouth (the "March 2013 SPA," FAC Ex. 7). Articles XIV and XV of the March 2013 SPA are Luxembourg choice of law and exclusive jurisdiction clauses, respectively. FAC ¶¶ 33-35.

The FAC further alleges that certain of the defendants have acted in concert to deprive Neuman of his purported ownership interest in CIG.

**<u>Factual and Legal Basis for Pillo Portsmouth's Planned Motion to Dismiss</u>**

Pillo Portsmouth intends to file a Motion to Dismiss the FAC for lack of personal jurisdiction; on *forum non conveniens* grounds; and pursuant to Rules 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

**1. *Forum Non Conveniens* and Lack of Personal Jurisdiction**

This Court is not the proper forum for Neuman's claims. As the above-referenced allegations in the FAC make clear, this case involves questions of ownership of a Luxembourg company, all of whose owners are either foreign individuals (Garcia, Mol, Heggelman) or domestic companies wholly owned by foreign entities and individuals (Pillo Portsmouth, Pillo Financial, CAV). The Luxembourg companies are organized under and governed by Luxembourg law, including with respect to corporate governance and fiduciary duty issues that will predominate. On the face of the FAC, there is virtually nothing to suggest that this case has a sufficient nexus to New York for this Court to exercise jurisdiction, or that doing so would make sense under the circumstances.

No operative agreement signed by Pillo Portsmouth consents to jurisdiction in New York. Rather, the only operative agreement attached to the FAC contains a provision for exclusive jurisdiction in Luxembourg. Significantly, the four earlier and expressly superseded agreements cited in, and attached to, the FAC (Exs. 1, 3, 4, 5, the "2009-10 Agreements") reference New York law and/or jurisdiction. But, even more significantly, the Settlement Agreement (Ex. 6) provides: "***All prior***

***agreements*** between [Garcia] and [Neuman] are hereby superseded by this memo of agreement" (emphasis added). The 2009-10 Agreements were all "prior agreements" between Garcia and Neuman, and were thus expressly superseded by the Settlement Agreement. The only agreement accompanying the FAC that came later, the March 2013 SPA (Ex. 7), includes provisions for Luxembourg law and it provides for exclusive jurisdiction in Luxembourg courts.[6] This, of course, is consistent with Neuman's expressed intent stated in FAC Exhibit 6 "to obtain residency in Luxembourg."

Importantly, none of the defendants, except Garcia, was a party to any agreement that consented to jurisdiction in New York. Indeed, the FAC is silent that any defendant is subject to general jurisdiction in New York or that the causes of action against the defendants arose from sufficient minimum contacts with New York. And the agreements to which Garcia was a party that contained New York forum clauses were all expressly superseded by Exhibit 6. In other words, there is no basis for general or specific jurisdiction over the defendants in New York. And, in particular, Pillo Portsmouth never agreed to New York as a forum, and it has no contacts with New York that subject it to jurisdiction here.

In addition, a court may dismiss a case based on the *forum non conveniens* doctrine even before it resolves the issue of whether it has subject matter or personal jurisdiction where subject matter and/or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435-36 (2007). Pillo Portsmouth will detail its arguments in favor of a *forum non conveniens* dismissal in the formal briefing on this subject.

**2. Failure to Plead Fraud with Particularity**

Of the nine counts in the FAC, seven are asserted against Pillo Portsmouth: Counts 3 (breach of fiduciary duty), 4 (conversion), 5 (conspiracy to commit conversion), 6 (replevin), 7 (fraud), 8 (conspiracy to commit fraud), and 9 (fraudulent conveyance). Each of these Counts is facially flawed and subject to dismissal pursuant to Fed. R. Civ. P. 9(b) and/or 12(b)(6).

Pillo Portsmouth will seek dismissal of each count that sounds in fraud pursuant to Fed. R. Civ. P. 9(b), for failure to plead the alleged fraud with sufficient particularity. Under that Rule, a plaintiff "must set forth the who, what, when, where and how of the alleged fraud." *Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd.*, 567 F. Supp. 2d 432, 441-42 (S.D.N.Y. 2008) (citations and

---

[6] Other than the superseded choice of law and forum selection clauses in the 2009-10 Agreements, the only allegation in the FAC that even mentions New York is an allegation that Garcia made false representations to Neuman "in telephone calls that took place in March 2013 when Neuman was in New York City and Garcia was in Luxembourg." FAC ¶ 46.

quotations omitted). To satisfy Rule 9(b), a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).

The FAC is largely devoted to describing a series of decade-old superseded agreements between Neuman and Garcia, to which the FAC has bootstrapped a handful of allegations to the effect that Pillo Portsmouth "participated in a plan to deprive" Neuman of his alleged interest in CIG. FAC ¶ 76. Pillo Portsmouth will argue in its Motion to Dismiss that the allegations that sound in fraud – which includes every one of the seven counts asserted against Pillo Portsmouth – are not pled with sufficient particularity. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On its face, the FAC does not contain plausible claims based on agreements that were admittedly superseded by the Settlement Agreement (FAC Ex. 6).

### 3. Statute of Limitations

Pillo Portsmouth also intends to move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because the FAC's claims are time barred. The FAC's principal claim (Count 1) is that Garcia and Pillo Financial breached the superseded April 2010 Stock Transfer Agreement (FAC Ex. 1) "on or about May 11, 2011, . . . by liquidating Pillo Financial's ownership interest in [CIG]."[7] FAC ¶ 45. Breach of contract claims are subject to a six-year statute of limitations, which begins accruing at the time of the alleged breach. N.Y. CPLR § 213(2); *see also CDx Lab'ys, Inc. v. Zila, Inc.*, 162 A.D.3d 972, 973 80 N.Y.S.3d 382, 383 (2d Dep't 2018).

The remaining claims in the FAC, including the seven counts alleged against Pillo Portsmouth, are derived from that alleged breach of the superseded 2010 Stock Transfer Agreement, and, as noted above, they largely sound in fraud. Under New York law, an "action based upon fraud" must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it." *Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748, 761 (S.D.N.Y. 2019) (quoting N.Y. C.P.L.R. § 213(8)). "[I]t is proper under New York law to dismiss a fraud claim on a motion to dismiss pursuant to the two-year discovery rule when the alleged facts ... establish that a duty of inquiry existed and that an inquiry was not pursued." *Id.* (citation omitted). With

[7] The most recent agreement between Neuman and any of the defendants is the March 2013 SPA. However, none of Neuman's claims arise from any alleged breach of that agreement.

reasonable diligence, Neuman could have discovered the purported fraud no later than 2013.[8] This is apparent on the face of the FAC.

**4. Replevin**

Count 6 of the FAC, the only count directed only at Pillo Portsmouth, seeks the "return [to Neuman] of his 50% beneficial interest in [CIG]" under a replevin theory. However, it is black-letter law that replevin is exclusively for the recovery of goods and chattels and does not lie for the recovery of stock rights or other inchoate property interests.

"An action of replevin may not be maintained for the recovery of an undivided interest or share in property[.]" 77 C.J.S. Replevin § 12. An action for replevin seeks the return of tangible chattel, not interests like stock shares. *See, e.g.*, *Bush v. Hillman Land Co.*, 22 Del. Ch. 374, 379–80, 2 A.2d 133, 135–36 (1938) ("Now since shares of stock in a corporation are intangible property incapable of manual seizure and delivery . . . it must follow that the preliminary seizure which the writ contemplates and the ultimate delivery of possession which it is the primary object of the replevin ultimately to accomplish, are impossible of attainment. Therefore replevin does not lie for shares of stock").

Under New York law, "[t]he term chattels includes goods and chattels; and, where the term appears in any statute or rule pertaining to an action to recover the same, it also includes all specific personal property, such as, but not limited to, **certificates of stock, bonds, notes, or other securities or obligations**." N.Y. Gen. Constr. Law § 15 (emphasis added).

Plaintiff has not alleged that he seeks the return of physical "certificates" that evidence his ownership of "stocks, bonds, notes or other securities or obligations." Indeed, he has not alleged that such certificates even exist. Rather, he seeks a general declaration of his legal interests. Count 6 does not state a cause of action for replevin.

Moreover, even if Plaintiff were to have a replevin claim, it would be barred, on the face of the FAC, by the three-year statute of limitations on replevin actions. "Actions in replevin are governed by a three-year statute of limitations. 'As against a thief, a cause of action for replevin accrues,

---

[8] "During telephone conversations between Neuman and Mol … over the summer of 2013, Neuman mentioned that he was still the beneficial owner of 50% of [CIG] pursuant to the [April 2010 Stock Transfer Agreement and April 2010 SSA]," and defendant Mol responded "that Neuman might be mistaken because the [Settlement Agreement], to which Mol was a party, provided that '[a]ll prior agreements between [Garcia] and [Neuman] are superseded by this memo of agreement.'" FAC ¶¶ 36-37. Thus, by admission in the FAC, Neuman was on notice that his claim to 50% ownership was questioned.

and the limitations period therefore begins to run, immediately upon the occurrence of the theft, and this is so even if the owner does not know that a theft has occurred.'" *Dore v. Wormley*, 690 F. Supp. 2d 176, 183 (S.D.N.Y. 2010) (*quoting Solomon R. Guggenheim Found. v. Lubell*, 153 A.D.2d 143, 550 N.Y.S.2d 618, 620 (1990)). Thus, based on the allegations of the FAC, the replevin count fails on this independent basis.

**Proposed Briefing Schedule for Motion to Dismiss**

While this letter is primarily focused on Pillo Portsmouth's anticipated Motion to Dismiss the FAC, many of the flaws and infirmities on the face of the FAC are applicable to other defendants as well. Proper service has not been effected on all defendants, however, and it is not clear whether and when Plaintiff's service will be effectuated. In addition, in a January 20, 2021 letter to the Court (Dkt. 38), counsel for CAV advised that they have agreed with counsel for Neuman that CAV's response to the FAC will be submitted on February 19, 2021.

We believe the most sensible approach is not for each defendant to file a series of substantially similar motions, but rather to submit a consolidated motion to dismiss on those issues that are common to all claims and defendants. In order to streamline this litigation and avoid duplicative, piecemeal responses and motions to the FAC, we propose that:

- The Court postpone the submission of any motions to dismiss unless and until all defendants have been properly served;

- Within 20 days of a determination by the Court that all defendants have been properly served, any defendants (other than Pillo Portsmouth) intending to file a motion to dismiss will submit a letter to the Court describing the motion and including a proposed schedule, consistent with Your Honor's Individual Rules.

Respectfully submitted,

/s/ Jule Rousseau

Jule Rousseau

cc: All counsel of record (via ECF)