**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PHIL NEUMAN,

Plaintiff,

-against-

JOSE GARCIA, TIM MOL, VICTOR HEGGELMAN, CARLISLE ACQUISITION VEHICLE, LLC, PILLO PORTSMOUTH HOLDING COMPANY, LLC, PILLO FINANCIAL CONSULTING CORP., and CARLISLE INVESTMENT GROUP, S.À.R.L.,

Defendants.

Case No.: 1:20-cv-10723-PKC

**LUXEMBOURG DEFENDANTS' MEMORANDUM IN RESPONSE TO THE JANUARY 14, 2021 ORDER TO SHOW CAUSE**

Defendants Jose Garcia, Tim Mol, Victor Heggelman, Pillo Financial Consulting Corp. ("Pillo Financial"), and Carlisle Investment Group, S.à.r.l. ("CIG") (together, the "Luxembourg Defendants"), through their undersigned counsel, submit this Memorandum in response to the Order to Show Cause Why Luxembourg Defendants Should Not Be Served By Email Under Rules 4(f)(3) and 4(h)(2) (the "OTSC," Dkt. 35), Plaintiff's Memorandum of Law in Support of [the OTSC] ("Plaintiff's Brief," Dkt. 33), and the Declaration of Edward Griffith in Support of Order to Show Cause (the "Griffith Dec.," Dkt. 34).

**PRELIMINARY STATEMENT**

This Luxembourg-centric case involves claims by the Plaintiff that he is, pursuant to a decade-old agreement with a Luxembourg resident who is a Spanish citizen, the rightful owner of an interest in a Luxembourg company, CIG. Neuman has sued four business entities and three individuals, claiming that his alleged ownership interest in CIG was taken from him *nine years*

*ago*, and that he only recently realized this significant development. The initial Complaint has already been amended once, as its jurisdictional allegations insufficiently pled diversity jurisdiction; the Plaintiff's difficulties in effecting service hint at another threshold weakness in the case: lack of personal jursidiction over the Luxembourg Defendants.

The Plaintiff's initial attempt to serve the original Complaint on the Luxembourg Defendants, by mailing it (himself) to the office address of nonparty Carlisle Management Company S.C.A. ("Carlisle SCA"), was flawed. After filing a First Amended Complaint to address the initial Complaint's deficient subject matter jurisdiction allegations ("FAC," Dkt. 23) he tried again to effectuate service, this time by having the Clerk of Court send the papers to the Luxembourg Defendants at Carlisle SCA. As explained below, this too was insufficient. With the OTSC, Plaintiff asks this Court to approve an attempt to make an end-run around the formal requirements of the Hague Convention, by authorizing him to serve the Luxembourg Defendants via email. Because Plaintiff has failed to undertake reasonable efforts to effect valid service under the Hague Convention, having chosen instead to pursue inadequate shortcuts, the Court should deny the request, and require Plaintiff to effect service through the formal, proper Hague Convention channels.

## ARGUMENT

### I. PLAINTIFF'S ATTEMPTED SERVICE OF THE FIRST AMENDED COMPLAINT ON THE LUXEMBOURG DEFENDANTS WAS NOT EFFECTIVE

Fed. R. Civ. P. 4(f)(1) provides that an individual in a foreign country may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." The Advisory Committee Notes to Rule 4 note the following about Rule 4(f)(1):

> Paragraph (1) gives effect to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, which entered into

> force for the United States on February 10, 1969. See 28 U.S.C.A., Fed.R.Civ.P. 4 (Supp. 1986). This Convention is an important means of dealing with problems of service in a foreign country. See generally 1 B. Ristau, International Judicial Assistance §§4–1–1 to 4–5–2 (1990). ***Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service***. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) (noting that voluntary use of these procedures may be desirable even when service could constitutionally be effected in another manner); J. Weis, The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity, 50 U. Pitt. L. Rev. 903 (1989). ***Therefore, this paragraph provides that, when service is to be effected outside a judicial district of the United States, the methods of service appropriate under an applicable treaty shall be employed if available and if the treaty so requires***.

Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment (emphasis added). This commentary, and the Supreme Court decision from which it is derived, could not be clearer: use of Hague Convention procedures, when available, is mandatory. Plaintiff here has almost entirely ignored the mandatory use of Hague Convention procedures. In a more recent case, the Court unanimously clarified that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies.'" *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (citation omitted).[1]

The default mechanism for service of process under the Hague Service Convention is set forth in Article 5, which provides for service in member countries through the appropriate Central Authority. Plaintiff chose to avoid the Luxembourg Central Authority entirely and opted instead to attempt to serve the Luxembourg Defendants through postal channels.[2] On January 7, Plaintiff

---

[1] This line of cases from the Court calls into question those decisions which permit Hague service under Rule 4(f)(3) if those alternative methods of service are not permitted under the Hague Convention and, therefore, pre-empted by the Hague Convention methods of service. The same standard would apply to plaintiff's request to serve by electronic mail – it is inconsistent with the Hague Convention and, therefore, pre-empted by the Hague Convention methods.

[2] It is unclear whether Luxembourg has approved service by mail under the Hague Convention. While Plaintiff's Brief states that "Luxembourg does not object to Article 10(a) provided the

requested that the Clerk of Court send the FAC to the Luxembourg Defendants; the Clerk did so, sending five packages via Federal Express on January 9. (Griffith Dec. ¶ 19, Ex. 13.) Pursuant to Mr. Griffith's instructions, the three packages directed to Messrs. Garcia, Heggelman, and Mol (the "Individual Defendants") were evidently sent to the office address of non-party Carlisle SCA. (Griffith Dec. Ex. 13.)

Mr. Griffith asserts that "the packages addressed to Carlisle Investment and Victor Heggelman were delivered" on January 11. (Griffith Dec. ¶ 19.) The next day, he filed Declarations of Service for CIG (Dkt. 29) and Heggelman (Dkt. 30). Those Declarations were accompanied by FedEx "proof of delivery" sheets indicating that the CIG and Heggelman packages were signed for by "M. Pazzaglia." (Dkt. 29-2, 30-2.) With respect to the three other Luxembourg Defendants (Garcia, Mol, and Pillo Financial), Mr. Griffith contends that the next day, on January 12, they "refused to accept delivery of their packages." (Griffith Dec. ¶¶ 19-20.) Noting that the FedEx "delivery exception" states that delivery was not accomplished because the packages were "refused by recipient," Mr. Griffith speculates that "…the office staff at the Carlisle headquarters in Luxembourg had been instructed to refuse delivery." (*Id.* ¶¶ 20-21, Ex. 4.) He proceeds to accuse the Luxembourg Defendants of "evad[ing] service," in an "effort to delay this action." (Griffith Dec. ¶ 23.)

---

judicial documents are accompanied by a translation into French or German," the U.S. State Department's Bureau of Consular Affairs website for Luxembourg states the opposite: "In its Declarations and Reservations on the Hague Service Convention, Luxembourg formally objected to service under Article 10, and does not permit service via postal channels.. Any other methods of service, including attempts at service by mail, are considered ineffective in Luxembourg and an affront to its judicial sovereignty." U.S. Dep't of State – Bureau of Consular Affairs, Luxembourg, Judicial Assistance Country Information, Service of Process (available at: https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Luxembourg.html).

This is false. In the accompanying Declaration of Anna Pazzaglia ("Pazzaglia Dec."), she explains that she is an office assistant employed by Carlisle SCA, and that she is the person who signed for the delivery of the two packages directed to Carlisle Investment and Heggelman on January 11. (Pazzaglia Dec. ¶¶ 2-3.) Ms. Pazzaglia further explains, however, that she is not, and never has been, authorized to accept service of legal documents on behalf of Carlisle Investment, Pillo Financial, or Messrs. Garcia, Heggelman, and Mol. (*Id.* ¶ 3.) Thus, when she opened the January 11 packages, she "discovered that they contained formal court papers that [she is] not authorized to accept or receive." (*Id.*) When three more identical packages that "clearly contained additional formal court papers" arrived the next day, she "declined to accept them for that reason." (*Id.*) Ms. Pazzaglia further notes that the Individual Defendants (Messrs. Garcia, Heggelman, and Mol) were not in the office when delivery was attempted – and in fact ***have not been in the office "for many weeks because of the COVID restrictions imposed in the Duchy of Luxembourg***." (*Id.* ¶ 4.)

Three important facts are apparent from these facts as set forth in the Griffith Dec. First, Plaintiff has not even attempted to employ the Hague Convention's standard procedure for serving defendants in foreign countries. Instead of using the Luxembourg Central Authority, he has attempted to serve the Luxembourg Defendants by mailing the papers to all of them at the same address and without any restriction on delivery. Second, Plaintiff did not attempt to accomplish this service by mail on any of the Individual Defendants at their homes: he simply sent it to an office where they sometimes work. Finally, he did so without attempting to ascertain who (if anyone) was there to receive them; whether any of the individual defendants were there to be served; or whether there was an officer, managing or general agent, or any other agent authorized to receive service of process on behalf of any of them.

Plaintiff also appears to have attempted to serve the Individual Defendants via mail without determining whether service in this manner was permissible under Luxembourg law. As this Court recently noted, "Article 10(a) does not itself affirmatively authorize international mail service," but "merely provides that the Convention 'shall not interfere with' the 'freedom' to use postal channels if the 'State of destination' does not object to their use." *In re Coudert Bros. LLP*, No. 16-CV-8237 (KMK), 2017 WL 1944162, at *7 (S.D.N.Y. May 10, 2017) (quoting *Brockmeyer v. May*, 383 F.3d 798, 803-04 (9th Cir. 2004)).[3] In other words, even if Luxembourg does not object to Article 10(a) of the Hague Convention, that is the beginning of the analysis. Plaintiff cannot credibly contend that the service by mail was effective without engaging in this analysis.

Service of legal process upon the citizens of foreign countries implicates the national sovereignty of the nation in which service is attempted. The reason for the Hague Convention was "to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash*, 137 S.Ct. at 1507. The Luxembourg Defendants are entitled to assert their right to proper service even though they do have knowledge of this lawsuit. Doing so does not constitute "evasion." As noted above, Plaintiff has ignored the main method for serving process through the Luxembourg Central Authority. Rather, he has opted to attempt to serve them by mail, but he has done so in the most perfunctory of ways: by sending the complaints to the Individual Defendants

---

[3] The Ninth Circuit also noted that: "As the Rapporteur for the Convention wrote in explaining Article 10(a), 'It should be stressed that ***in permitting the utilization of postal channels, ... the draft convention did not intend to pass on the validity of this mode of transmission under the law of the forum state: in order for the postal channel to be utilized, it is necessary that it be authorized by the law of the forum state***…' 1 Ristau § 4–3–5, at 205 (emphasis added) (quoting Service Convention Negotiating Document); *see also id.* at 162 ('***Even though a contracting state may not object to methods of service of foreign judicial documents in its territory in a manner other than as provided for in the Convention ... it is still necessary that the law of the state where the action is pending authorize the particular method of service employed***.')." *Brockmeyer*, 383 F.3d at 804 (emphasis added).

the business address of a non-party (Carlisle SCA), evidently without undertaking even *de minimis* due diligence to determine whether the people and entities he sought to serve were there, or whether such service would be permissible in Luxembourg. The real issue here is not "evasion of service": it is that Plaintiff wants to take shortcuts.

## II. THE COURT SHOULD NOT AUTHORIZE SERVICE BY EMAIL UNDER RULE 4(F)(3) BECAUSE THE PLAINTIFF HAS NOT ATTEMPTED PROPER SERVICE UNDER THE HAGUE CONVENTION

At the first sign that the blunderbuss approach Plaintiff took to serving the Luxembourg Defendants was problematic, the Plaintiff did not seek to serve via the Luxembourg Central Authority, as the Hague Convention contemplates; he came instead to this Court, asking it to approve an effort to short-circuit the process, ignore the Hague Convention, and approve service by means that would not be proper in the courts of Luxembourg. This request does not comport with the established standards employed by this Court in determining whether to authorize such alternative service and should be denied.

Plaintiff's Brief does not address the fact that this Court employs a two-part test in determining whether to authorize alternative service under Rule 4(f)(3).[4] "[D]istrict courts in this Circuit generally impose two additional threshold requirements before authorizing service under Rule 4(f)(3): (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Devi v. Rajapaska*, No. 11 CIV. 6634 NRB, 2012 WL 309605, at *1 (S.D.N.Y. Jan. 31, 2012); *see also In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Imposing such a requirement has been viewed as necessary 'in order to prevent parties from

---

[4] As noted, *supra*, at note 1, methods of service under Rule 4(f)(3) that are inconsistent with the Hague Convention are pre-empted by it and not permitted.

whimsically seeking alternate means of service and thereby increasing the workload of the courts.'") (quoting *Ryan v. Brunswick Corp.*, No. 02-CV-0133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002)).

In *Devi*, the court declined to authorize alternative service under Rule 4(f)(3) because it concluded the plaintiff had "failed to satisfy the first of these threshold requirements" because it had "not attempted to serve defendant through the Hague Convention, the traditional mechanism for effectuating service abroad." 2012 WL 309605, at *2. In another recent decision in which the two-part test was applied to a request for alternative service under Rule 4(f)(3), *Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212 (S.D.N.Y. 2019), this Court again declined to authorize alternative service on a foreign defendant "through email or via the Company's registered agent." *Id.* at 220. There too, the plaintiff "ha[d] not even attempted to comply with the Hague Convention," and, as here, did "not address either of these requirements" – i.e., did not attempt to show either that they had "reasonably attempted to effectuate service," or that "the circumstances are such that the court's intervention is necessary." In denying the request to authorize alternative service, the Court noted that:

> The Court is mindful of Baliga's allegations and desire to move quickly. However, those reasons are no excuse to flout procedural rules, especially without support for his request. The plaintiff seeking alternative service in *GLG Life Tech*, for example, attempted to obtain the defendant's residential address in China and submitted an affidavit regarding the difficulty and delay of service of process in China. 287 F.R.D. at 264, 266-68. Baliga has made no such showing or attempt here.

*Id.* Thus, because the plaintiff had failed to show that it had taken sufficient steps to effectuate service on its own, the Court concluded that alternative service was not warranted, and denied the request without prejudice.

So too here. Neuman has *not even attempted* to serve the Luxembourg Defendants through the Hague Convention, and thus cannot meet either prong of the two-part test described in *Devi* and *Baliga*.[5] What he has done instead is to try to make an end-run around that treaty and its longstanding requirements and procedures. Because he has failed to show that he has reasonably attempted to effectuate service, and because he has failed to show that the Court's intervention is necessary, that attempt should be rejected.

## CONCLUSION

Based upon the foregoing, the Luxembourg Defendants respectfully submit that the Plaintiff's request that the Court authorize email service of the Luxembourg Defendants should be denied.

Dated: January 22, 2021

ARENT FOX LLP

By: /s/ *Jule Rousseau*
Julius A. Rousseau, III
David Ward
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Telephone: (212) 484-3900
Email: jule.rousseau@arentfox.com
david.ward@arentfox.com

James H. Hulme (*pro hac* application to be submitted)
1717 K Street NW
Washington, D.C. 20006
Telephone: (202) 857-6109
Email: james.hulme@arentfox.com

*Attorneys for Luxembourg Defendants*

[5] Unlike cases involving attempted Hague Convention service in China and other potentially less cooperative nations, there is not even a hint of suggestion that the Central Authority of the Grand Duchy of Luxembourg is anything less than prompt and efficient in handling service of process under the Hague Convention.