**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x

| | | |
|---|---|---|
| PHIL NEUMAN,<br>Plaintiff,<br>-against -<br><br>JOSE GARCIA, et al.,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: | Case No.: 1:20-cv-10723 (PKC) |

---------------------------------------------------x

# REPLY MEMORANDUM IN SUPPORT OF ALTERNATIVE SERVICE OF THE LUXEMBOURG DEFENDANTS UNDER RULES 4(f)(3) AND 4(h)(2)

Plaintiff Phil Neuman submits this reply memorandum in further support of his motion by Order to Show Cause for leave to serve the Luxembourg Defendants by email under Rules 4(f)(3) and 4(h)(2) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Despite their assertion that Mr. Neuman's claims lack merit and should be dismissed, *see* Pre-Motion Letter (Doc. 39), the Luxembourg Defendants challenge service based on mistaken procedural objections in an attempt to delay a merits resolution for as long as possible. They acknowledge that they have received the Summonses and the Amended Complaint, and they have retained counsel who has appearance on their behalf. *See* Notice of Appearance (Doc. 43).

These circumstances warrant alternative service under Rules 4 (f)(3) and 4(h)(2) to avoid unnecessary costs and motion practice over technical service

questions. The Luxembourg Defendants' mistaken insistence on time-consuming service through central authorities under Article V of the Hague Service Convention belies their bravado in disparaging Mr. Neuman's claims and underscores their motivation to delay or avoid addressing those claims.

## I. SERVICE UNDER ARTICLE V OF THE HAGUE CONVENTION IS NOT MANDATORY.

The Luxembourg Defendants mistakenly assert that Mr. Neuman must first attempt service under Article V of the Hague Service Convention, which requires a months-long transmittal of the initiating documents through the Luxembourg Central Authority. They rely on the Advisory Committee comment to Rule 4(f)(1):

> *[T]he methods of service appropriate under an applicable treaty [such as the Hague Service Convention] shall be employed if available and if the treaty so requires.*

Opp. Mem. at 3 (emphasis in original).

The Convention, however, provides for several methods of service in addition to the Article V central authority method. *See*, *e.g.*, *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504, 1508 (2017) ("Submitting a request to a central authority is not, however, the only method of service approved by the Convention."). For example, under Article 10(a) "the Convention does not prohibit service by mail." *Id*. at 1513.

Thus, "in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met:

> First, the receiving state has not objected to service by mail; and
>
> [S]econd, service by mail is authorized under otherwise-applicable law."

*Id*. (citing *See Brockmeyer v. May*, 383 F.3d 798, 803-804 (9th Cir. 2004)).

Here, both conditions are met. First, Luxembourg does not object to service by mail under Article 10(a). Although Luxembourg initially objected, it withdrew its objection by Note dated June 2., 1978. *See* Hague Conference on Private International Law ("HCCH"), Luxembourg Declarations to the Hague Service Convention (Exhibit 1) at ¶ 3 ("Luxembourg communicated the withdrawal of this declaration [objecting to Article 10(a)] by a Note dated 2 June 1978.").[1]

The Luxembourg Defendants rely on an obvious mistake on the Travel.State.gov website maintained by the U.S. state department, which asserts:

> In its Declarations and Reservations on the Hague Service Convention, Luxembourg formally objected to service under Article 10, and does not permit service via postal channels.

Tavel.State.Gov, Judicial Assistance webpage for Luxembourg.[2]

When Mr. Neuman's counsel advised the state department of this obvious

---

[1] https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=411&disp=resdn

[2] https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Luxembourg.html.

error, it immediately acknowledged the mistake and agreed correct its website. In a January 26, 2021 email, the U.S. Embassy in Luxembourg advised:

> Thank you for your message and for alerting us to the mistake. *We forwarded your email to our colleagues in Washington, and have been advised that this error will be corrected.* Further, our colleagues recommend that for the most up-to-date and accurate information concerning the operations of the Hague Conventions you should always refer first to HCCH.net.

January 26, 2021 email exchange (Exhibit 2) (emphasis added).[3]

The Supreme Court's second condition, that service by mail is authorized under otherwise-applicable law, is also satisfied. Rule 4(f)(2)(C) provides that unless *prohibited* by the receiving state's laws, service may be made

---

[3] The Luxembourg Defendants should have recognized that this information was mistaken, since it is contrary to the official information regarding the declarations of signatories to the Hague Service Convention maintained by the HCCH, which was cited in Mr. Neuman's supporting memorandum. Sup. Mem. (Doc. 33) at 6 n.3. And the state department's website contains the following express disclaimer:

> The information is provided for general information only and *may not be totally accurate in a specific case*. Questions involving *interpretation of specific foreign laws should be addressed to the appropriate foreign authorities* [such as the HCCH] or foreign counsel.

(emphasis added) (all caps in original). *See*, *also* U.S. Marshall's website, Service of Process, Hague Convention on the Service Abroad (Exhibit 3) at n.11 ("Luxembourg communicated the withdrawal of its declaration opposing service through postal channels"); Withdrawal of a declaration by the Grand Duchy of Luxembourg, *Luxembourg Gazette* (*Mémorial A*), No. 48, August 7, 1978 (Exhibit 4) at 1070 (codifying June 2, 1978 Note) (with English translation).

> using any form of mail that the clerk addresses and sends to the individual and that requires signed receipt.

Fed. R. Civ. P. 4(f)(2)(C)(ii) (emphasis added).

## II. THE LUXEMBOURG DEFENDANTS WERE SERVED BY MAIL UNDER RULES 4(f)(2)(C)(ii) AND 4(h)(2).

The Luxembourg Defendants mistakenly assert that service by mail is proper only if authorized under Luxembourg's domestic laws. Opp. Mem. at 6. Under Rule 4(f)(2), however, the relevant issue is not whether Luxembourg authorizes service by mail, but whether Luxembourg has "prohibited" international service by mail. By withdrawing its objection to Article 10(a), Luxembourg has declared that it does not.

The Luxembourg Defendants ignore the federal case law confirming that service by mail on parties in Luxembourg is effective because Luxembourg no longer objects to Article 10(a). Sup. Mem. at 7 (quoting *Calix v. Alfa Consult, S.A.*, 2015 WL 3902918, *4 (N.D. Cal. June 24, 2015) ("Luxembourg was not opposed to service by postal channels. Pursuant to Rule 4(f)(2)(C)(ii), the court clerk mailed the Summons and Complaint to Alfa … Thus, Alfa was properly served.").

The case law cited by the Luxembourg Defendants is not to the contrary. *In re Coudert Brothers*, 2017 WL 1944162 (S.D.N.Y. May 10, 2017), for example, the plaintiff asserted that Rule 4(f)(1) authorizes service by mail because such service is an "internationally agreed method of service." The court correctly rejected that argument, holding that service by mail is not "internationally agreed" because

Article 10(a) does not affirmatively authorize it. 2017 WL 1944162 at *8.

In fact, the *Coudert Brothers* held that in contrast to Rule 4(f)(1), Rule 4(f)(2)(C)(ii) authorizes service by mail on foreign parties when the country where the defendant is located (the "receiving country") has not objected to Article 10(a). 2017 WL 1944162 at *12. The Luxembourg Defendants also mistakenly cite *Brockmeyer v. May*, 383 F.3d 798, 803-04 (9th Cir. 2004). Opp. Mem. at 6, 6 n.3. *Brockmeyer* holds that the *law of the forum country*, in this case the United States -- not the law of the receiving county -- must affirmative authorize service:

> "Even though a contracting state may not object to methods of service of foreign judicial documents in its territory in a manner other than as provided for in the Convention ... *it is still necessary that the law of the state where the action is pending* authorize the particular method of service employed."

Opp. Mem. at 6 n.3.[4] *Accord Coudert Brothers*, 2017 WL 1944162 at *7 (same).

Thus, the clerk's mailing of the Federal Express packages properly effected service on the Luxembourg Defendants.

## III. RULE 4(f)(3) SERVICE IS NECESSARY TO AVOID UNNECESSARY DELAYS AND MOTION PRACTICE.

The Luxembourg Defendants concede that they already "have knowledge of this lawsuit." Opp. Mem. at 6. Yet the purpose of service under the Hague Service

[4] Quoting *Brockmeyer*, 383 F.3d at 804 (quoting Rapporteur for the Hague Service Convention, 1 Bruno A. Ristau, *Int'l. Judicial Asst.* § 4-3-5, at 205 (2000).

Convention is to "ensure that defendant has actual notice of the suit." *Devi v. Rajapska*, 2012 WL 309605, *2 (S.D.N.Y. Jan. 31, 2012) (Opp. Mem. at 7). Since that purpose has already been accomplished, the Luxembourg Defendants' only motive for insisting on "their right to proper service," Opp. Mem. at 7, is to delay or avoid addressing Mr. Neuman's claims.

The Luxembourg Defendant do not dispute "[t]he decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." *GLG Live Tech Corp. Securities Litigation,* 287 F.R.D. 262, 265 (S.D.N.Y. 2012) ("GLG") (internal quotes and citations omitted). Their only objection is the mistaken assertion that service must first be attempted under Article V of the Hague Service Convention. Even the case law on which they rely, however, establishes the opposite, that there is no priority among Rule 4(f)'s authorized methods of service and no requirement that one method be attempted before resorting to another. The *GLG* court, for example, explained:

> Courts have repeatedly recognized that "there is no hierarchy among the subsections in Rule 4(f)." … Accordingly, "court-directed service under Rule 4(f)(3) is as favored as service under Rule 4(f)(1)," … As one court has put it, service under Rule 4(f)(3) is "neither a 'last resort' nor 'extraordinary relief.'"

287 F.R.D. at 265 (citations omitted) (cited at Opp. Mem., pp. 7-8).

The Luxembourg Defendants mistakenly rely on a prudential rule that parties seeking Rule 4(f)(3) alternative service must make a threshold showing

> that they have reasonably attempted to effectuate service … and … the district court's intervention is necessary….

*Ryan v. Brunswick Corp*., 2002 WL 162893, *2 (W.D.N.Y. May 31, 2002) (Opp. Mem. at 8). That rule's purpose is "to prevent parties from whimsically seeking alternate means of service and *thereby increasing the workload of the courts*." *Id*.

Here, Mr. Neuman has not only attempted service, but he has effected service under Rule 4(f)(2)(C)(ii). Sup. Mem. (Doc. 33) at § I; *supra*, at § II.[5] Yet the Luxembourg Defendants intend to challenge service, which would result in unnecessary and time-consuming motion practice. Allowing email service under Rule 4(f)(3) would preclude such motion practice, thereby advancing the goal of avoiding an unnecessary increase in "the workload of federal courts." *Ryan*, at *2.[6]

Federal courts routinely allow alternative service by email where, as here, such service (i) is "not prohibited by international agreement," Rule 4(f)(3); and (ii)

> comports with due process because it is reasonably calculated, under all the circumstances to apprise [defendant] of the

[5] Although three of the Luxembourg Defendants refused to accept delivery of the clerk's Federal Express packages, they nevertheless have been served. *See* Sup. Mem. (Doc. 33) at 8. *See also* Fed. R. Civ. P. 4(l)(2)(B) (proof of service under Rule 4 (f)(3) may be evidenced "*by other evidence satisfying the court that the summons and complaint were delivered to the addressee*.") (emphasis added).

[6] "Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)." *GLG,* 287 F.R.D. at 266 ("the length of time required for service under the Hague Convention, approximately six to eight months … may unnecessarily delay this case") (citing several other cases).

> pendency of the action and afford [him] an opportunity to present [his] objections.

*AMTO, LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at *10 (S.D.N.Y. June 1, 2015) (quoting *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)).

Here, the only potentially applicable international agreement is the Hague Service Convention, which does not prohibit email service. *See*, *e.g.*, *Advanced Access Content System v. Shen*, 2018 WL 4757939 (S.D.N.Y. September 30, 2018) (authorizing Rule 4(f)(3) email service on a party in China, which is a signatory to the Hague Service Convention); *NorthStar Moving Holding v. Northstar Movers*, 2019 WL 9093463, *1 (S.D. Fla. December 17, 2019) (granting service by email on defendant in Israel under Rule 4(f)(3) because Hague Service Convention does not prohibit email service) (citing *Williams-Sonoma Inc. v. Friendfinder Inc*., 2007 WL 1140639, *5 (N.D. Cal. April 17, 2007) (same).[7]

There is no question that email service comports with due process in this case since the Luxembourg Defendants concede that they already have knowledge of this

[7] Email service may be allowed under Rule 4(f)(3) regardless whether such service is authorized under the domestic law of the receiving country. *See*, *e.g.*, *Rio Props*., 284 F.3d at 1014 (9th Cir. 2002) ("as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country.").

lawsuit and they do not dispute that they regularly correspond with Mr. Neuman via email. *See* Neuman Dec. (Doc. 34) at ¶¶ 3-4.

Finally, where, as here, the defendants have retained U.S. counsel to appear on their behalf and the evidence indicates that counsel is in communication with the defendants, "in many instances, courts have authorized service under Rule 4(f)(3) on [the U.S.] counsel." *GLG,* 287 F.R.D. at 267 (citing several other cases). In *GLG* (cited at Opp. Mem., pp. 7-8), the court allowed service on U.S. counsel based on its finding that such service was "virtually guaranteed to provide notice to" the foreign defendants. Here, such service is guaranteed to provide such notice without qualification since the Luxembourg Defendants concede that already have notice.

**CONCLUSION**

The Court should authorize email service of the Luxembourg Defendants under Rules 4(f)(3) and 4(h)(2) of the Federal Rules of Civil Procedure.

Dated: January 27, 2021

THE GRIFFITH FIRM

*/s/ Edward Griffith*
By:______________________________
EDWARD GRIFFITH, ESQ.
45 Broadway, Suite 2200
New York, New York 10006
(646) 645-3784 (mobile)
eg@thegriffithfirm.com