Arent Fox

Arent Fox LLP / Attorneys at Law
Boston / Los Angeles / New York / San Francisco / Washington, DC

April 16, 2021

**James H. Hulme**
Partner
202.857.6144 DIRECT
202.857.6395 FAX
james.hulme@arentfox.com

VIA ECF

Hon. P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10017-1312

Re: *Neuman v. Garcia, et al.*, Case No.1:20-cv-10723

Dear Judge Castel:

This firm represents all of the remaining[1] defendants in the above-referenced action: Jose Garcia, Tim Mol, Victor Heggelman, Pillo Portsmouth Holding Company, LLC ("Pillo Portsmouth"), Pillo Financial Consulting Corp. ("Pillo Financial"), and Carlisle Investment Group, S.à.r.l. ("CIG"). The next scheduled conference with the Court is an Initial Pretrial Conference on April 29, 2021 at 2:30 PM. The purpose of this letter is to advise the Court and the plaintiff, pursuant to Rule 3(A) of Your Honor's Individual Practices, that defendants intend to file a Motion to Dismiss the Second Amended Complaint (the "SAC") for several legal and prudential reasons. This letter describes the anticipated factual and legal basis for that Motion, and to propose a briefing schedule for it.

The dispute concerns plaintiff Phil Neuman's alleged ownership interest in two companies, defendant CIG and non-party Carlisle Management Company S.C.A. (the "Company"), both of which are based in, and organized under the laws of, the Grand Duchy of Luxembourg. Other than CIG, all of the defendants are individuals who are foreign nationals (Garcia, Mol, Heggelman), or non-New York domestic entities owned by Garcia (Pillo Financial and Pillo Portsmouth). In sum and substance, the ten-count[2] SAC alleges that the defendants have fraudulently deprived Neuman of his purported interest in one of those companies, defendant CIG.

---

[1] The initial Complaint and the First Amended Complaint named Carlisle Acquisition Vehicle, LLC as a defendant. It has been dropped from the Second Amended Complaint.

[2] While the SAC asserts ten causes of action, the last two – conspiracy to commit fraud and fraudulent conveyance – are both confusingly styled as the "Ninth Claim for Relief." We assume

The defendants all have one thing in common: nonexistent connections to New York. Even accepting the SAC's allegations as true, they demonstrate that there is no present connection to New York sufficient to establish personal jurisdiction over any defendant. The only two exhibits to the SAC (Exs. 4 and 5) that contain New York forum selection clauses are eleven years old and have been expressly superseded by Exhibit 6 to the SAC: the April 27, 2012 "Settlement Agreement." That document provides: "All prior agreements between JG and PN are hereby superseded by this memo of agreement."[3] The Settlement Agreement confirms that by 2012 the parties had shifted their focus to Luxembourg. Thus, Exhibit 7, the most recent agreement attached to the SAC (from 2013), requires that any action "shall be brought by any of the Parties in the courts of Luxembourg-City, Grand Duchy of Luxembourg and each of the Parties hereby submits to the exclusive jurisdiction of such courts . . . ."

The provenance of the Settlement Agreement and the circumstances of its negotiation and execution are relevant to the personal jurisdiction and statute of limitations issues and will be supported by affidavits setting forth the facts relating to personal jurisdiction, *forum non conveniens*, and statute of limitations. For example, Neuman's emails demonstrate that he threatened the defendants with litigation in 2012 and that he proposed the language voiding all prior agreements as part of the settlement he and the defendants agreed to that year. Thus, on April 20, 2012, Neuman wrote to Mol and Garcia:

> I have already retained Local Council and Intend to commence Legal proceedings within the next 10 days. This letter is notice and demand that, <u>effective immediately</u>, all writings, documents, records, communications and/or data compilations, whether in physical form or existing in electronic form on computers, computer systems, servers and/or devices of Jose Garcia, Tim Mol, Victor Heggelman, Kevin Neal, Peter Dodd, Carlisle, Luxembourg Life Fund, Fortress, and all related entities pertaining to the operations of Carlisle and the above are to be preserved and retained in light of the contemplated litigation. Be advised that we intend to make similar demands upon Caseis Bank, Caixia, FastNet, Wells Fargo, and other associated related entities within the next 5 Days.

Email, Neuman to Garcia, April 20, 2012, attached here as Exhibit A. Four days later, Neuman wrote to Mol and stated: "I still reserve all my rights to continue to litigate and I have informed

---

this is a drafting error, and that the defendant intended to designate one of these two counts as its Tenth Claim for Relief.

[3] One of the two exhibits with a New York forum selection clause, Ex. 5, pertains to the plaintiff's ownership interest in the Company, and does not give rise to any of the claims alleged in the SAC.

you that you will be involved in this litigation including the possibility of being named directly in the pending lawsuit." Email, Neuman to Mol, April 24, 2012, attached as Exhibit B. In that email, Neuman then proposed a number of settlement terms, including: "All previous agreements are Null and Void." In response, Mol agreed on behalf of Garcia. *Id*. On April 27, 2012, the parties signed the Settlement Agreement (SAC Ex. 6), while Neuman and Mol were in Switzerland and Garcia was in Luxembourg. The Settlement Agreement represented a fresh start, but more importantly for present purposes it rescinded any New York forum selection clauses. Thereafter, the parties consistently selected Luxembourg as the situs for resolving any disputes.

Thus, the provisions of the two most recent agreements with Neuman (Exs. 6 and 7) are two of many indications of an indisputable fact: that CIG and the Company have been based in Luxembourg since at least 2012. Thus, even if this Court were to conclude that it has personal jurisdiction over all of the defendants, the *forum non conveniens* doctrine would point to the courts of Luxembourg, not New York, as the proper forum for this dispute.[4] Moreover, the SAC's claims– which arise from a superseded, eleven-year-old agreement, and an alleged breach thereof that occurred in 2011 – are time-barred, facially deficient, and subject to dismissal under Rules 9 and 12.

**Background**

The SAC is rooted in an allegation that plaintiff Phil Neuman – as a result of two agreements entered into in 2009 and 2010 – owns a 50% interest in a Luxembourg company, defendant CIG (referred to in the SAC as the "General Partner"). In sum and substance, the SAC's principal claim (Count I) is that Garcia and Pillo Financial breached those agreements in 2011, by transferring Neuman's purported interest in CIG without his knowledge or permission. The nine remaining counts in the SAC – which allege breach of fiduciary duty, conversion, fraud, fraudulent conveyance, and conspiracies to commit same – are derivative of that foundational allegation.

The allegations in the SAC that are most relevant to the Motion to Dismiss that the defendants intend to file are as follows:[5]

- Plaintiff Neuman is a citizen of Nevada. SAC ¶ 15.

---

[4] Indeed, Neuman has already availed himself of the Luxembourg courts in a recently filed action against the Company.

[5] The defendants will dispute some of these allegations at the appropriate time, but for purposes of this letter, present them as true.

- Defendants Jose Garcia, Tim Mol, and Victor Heggelman are citizens of Spain, the Netherlands, and Luxembourg, respectively. They are all residents of Luxembourg. SAC ¶¶ 16-18.

- Defendant Pillo Portsmouth is a Delaware limited liability company whose sole member is Jose Garcia. Defendant Pillo Financial is a corporation organized under the laws of the District of Columbia. SAC ¶¶ 19-20.

- Defendant CIG, the ownership of which is the central dispute that animates the SAC, is a "Luxembourg company," "based in Luxembourg," whose members are Mol, Heggelman, Carlisle Acquisition Vehicle, LLC ("CAV"), and Pillo Portsmouth. SAC ¶¶ 2, 21, 24.

- "By the spring of 2012, disputes between Neuman and Garcia had arisen regarding management and control of the Company and its investment funds." SAC ¶ 32. Neuman and Garcia executed an agreement to resolve those disputes, which was dated April 27, 2012 (the "2012 Settlement Agreement," SAC Ex. 6). It provides that "All prior agreements between [Garcia] and [Neuman] are hereby superseded by this memo of agreement," recites that Neuman "desires to obtain residency in Luxembourg," and provides that Neuman "will receive" both "a cash payment of USD $150,000" and "20% of shares in [the Company]." SAC Ex. 6.

**Factual and Legal Basis for the Defendants' Planned Motion to Dismiss**

The defendants intend to file a Motion to Dismiss the SAC for lack of personal jurisdiction, on *forum non conveniens* grounds, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure because the claims are time-barred on the face of the SAC, and for failure to plead fraud with the required particularity and failure to state a claim.

**1. Lack of Personal Jurisdiction and *Forum Non Conveniens***

The first ground on which the defendants will seek dismissal of this action is that this Court is not the proper forum for Neuman's claims. As the above-referenced allegations in the SAC make clear, this case involves questions of ownership of a Luxembourg company, CIG, the beneficial owners of which are all themselves foreign nationals.[6] CIG is organized under and governed by Luxembourg law, including with respect to corporate governance and fiduciary duty issues that will predominate. On its face, there is nothing in the SAC to suggest that this case has a sufficient

[6] While Pillo Portsmouth is a Delaware LLC, its sole member, Jose Garcia, is a Spanish citizen who resides in Luxembourg.

nexus to New York for this Court to exercise jurisdiction, or that this is the correct forum for this dispute even if it did have jurisdiction.

While the Complaint is accompanied by seven exhibits, only the two most recent ones are operative: the 2012 Settlement Agreement (Ex. 6) and the 2013 SPA (Ex. 7). The 2012 Settlement Agreement provides that "***All prior agreements*** between [Garcia] and [Neuman] ***are hereby superseded*** by this memo of agreement" (emphasis added). Exhibits 1-5 were all "prior agreements" between Garcia and Neuman. Indeed, the prior agreements were all signed by Neuman and Garcia and only by Newman and Garcia. By its express terms, the Settlement Agreement superseded all of them. As for the 2013 SPA, it was the consummation of the provision in the 2012 Settlement Agreement that Neuman would receive "20% of shares in [the Company]." The 2013 SPA includes provisions for Luxembourg law (Article XIV) and provides for exclusive jurisdiction in Luxembourg courts (Article XV), consistent with the fact that CIG and the Company are Luxembourg entities, and with Neuman's stated intent in the 2012 Settlement Agreement "to obtain residency in Luxembourg."

In what is likely a recognition of the fact that the 2012 Settlement Agreement is fatal to its claims, the SAC includes a new Third Claim for Relief which seeks a Declaratory Judgment that that Agreement "is null and void" because Garcia and Mol "defaulted on each of their obligations set forth in paragraphs 2, 4, 6 and 7 of the [2012 Settlement Agreement]" by a) failing to provide Neuman "full access to the Carlisle offices," b) removing Neuman from the Carlisle website in December 2020, c) failing to give Neuman 25% of Mol's time, and d) failing to initiate the transfer of 20% of the shares of the Company "within 120 days." SAC ¶ 71. Putting aside the staleness of these claims, the 2012 Settlement Agreement was negotiated and signed in Luxembourg and Switzerland and is governed by Luxembourg law. As a result, all effective agreements among the parties (i.e., those not superseded) call for exclusive jurisdiction in Luxembourg. Neuman's newfound attempt to litigate the validity of this important agreement here is a further indication that this Court is not the proper venue for any of the claims in the SAC to be heard.

Because the agreement with a New York forum selection clause that animates Neuman's claims (the April 2010 SSA, Ex. 4) was superseded by the 2012 Settlement Agreement, there is no basis for general or specific jurisdiction over the defendants in New York. In addition, a court may dismiss a case based on the *forum non conveniens* doctrine even before it resolves the issue of whether it has subject matter or personal jurisdiction where subject matter and/or personal jurisdiction is difficult to determine. In this case, which involves a dispute against European citizens about the ownership of a Luxembourg entity, *forum non conveniens* considerations weigh heavily in favor of dismissal, and the Court can and should dismiss on that ground even without the need to determine whether the Court has personal jurisdiction over any of the defendants. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) ("But where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens*

considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course."); *see also Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1073 (S.D.N.Y. 1992) ("Where an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished."), *aff'd*, 990 F.2d 71 (2d Cir. 1993).

**2. Statute of Limitations**

The defendants also intend to move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because the SAC's claims are time barred. The SAC's first, foundational claim (Count 1) is that Garcia and Pillo Financial breached the April 2010 Stock Transfer Agreement (SAC Ex. 1) "on or about May 11, 2011 . . . by liquidating Pillo Financial's ownership interest in [CIG]."[7] SAC ¶ 57. Breach of contract claims are subject to a six-year statute of limitations, which begins accruing at the time of the alleged breach. N.Y. CPLR § 213(2); *see also CDx Lab'ys, Inc. v. Zila, Inc.*, 162 A.D.3d 972, 973, 80 N.Y.S.3d 382, 383 (2d Dep't 2018).

Other than the Third Claim for Relief (which seeks a declaratory judgment that the 2012 Settlement Agreement is "null and void"), the SAC's remaining claims are derived from that alleged breach of the 2010 Stock Transfer Agreement. As noted above, they sound in fraud. Under New York law, an "action based upon fraud" must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it." *Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748, 761 (S.D.N.Y. 2019) (quoting N.Y. C.P.L.R. § 213(8)). "[I]t is proper under New York law to dismiss a fraud claim on a motion to dismiss pursuant to the two-year discovery rule when the alleged facts ... establish that a duty of inquiry existed and that an inquiry was not pursued." *Id*. (citation omitted). As will be explained in the Motion to Dismiss, it is apparent from the allegations in the SAC that Neuman could, with reasonable diligence, have discovered the purported fraud no later than 2013.[8] Indeed, Neuman's own emails attached to this letter, which

[7] The most recent agreement between Neuman and any of the defendants is the March 2013 SPA. However, none of Neuman's claims arise from any alleged breach of that agreement.

[8] "During telephone conversations between Neuman and Mol … over the summer of 2013, Neuman mentioned that he was still the beneficial owner of 50% of [CIG] pursuant to the [April 2010 Stock Transfer Agreement and April 2010 SSA]," and defendant Mol responded "that Neuman might be mistaken because the [Settlement Agreement], to which Mol was a party, provided that '[a]ll prior agreements between [Garcia] and [Neuman] are superseded by this memo of agreement.'" SAC ¶¶ 46-47. Neuman has thus admitted that he was on notice that his claim to 50% ownership was questioned by one of the defendants, Tim Mol. In addition, the SAC alleges that "Garcia told Neuman that he had transferred a portion of Garcia's ownership interest in [CIG]

will be further explicated in the motion, establish that Neuman was well aware of his claims and repeatedly threatening to file lawsuits in 2012 — nine years ago.

**3. Failure to Plead Fraud with Particularity and Failure to State a Claim That Is Plausible on its Face**

Iterations of "fraud" appear twenty-eight times in the SAC, and it is reasonably clear that the gravamen of the SAC sounds in fraud, as do its ten claims for relief. Those claims are thus subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). Applying those requirements to the SAC reveals that it fails to meet those requirements. The Motion to Dismiss will thus seek their dismissal on that basis under Rule 9, and for the SAC's related failure to state a claim for relief that is plausible on its face.

Rule 9(b) requires plaintiffs to "set forth the who, what, when, where and how of the alleged fraud." *Telenor E. Invest AS v. Altimo Holdings & Invs. Ltd.*, 567 F. Supp. 2d 432, 441-42 (S.D.N.Y. 2008) (citations and internal quotation marks omitted). To satisfy Rule 9(b), a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996) (citations omitted); *see also First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) ("In addition to alleging the particular details of a fraud, 'the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent'") (citations omitted). In addition to these requirements, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The claims in the SAC derive entirely from a series of decade-old agreements between Neuman and Garcia, to which the plaintiff has bootstrapped allegations to the effect that the defendants "participated in a plan" not only to "deprive" Neuman of his alleged interest in CIG, but to "fraudulently induce Neuman to fail to enforce his rights to 50% of the beneficial interest in [CIG]." SAC ¶¶ 98, 110. The Motion to Dismiss will explain that those prior agreements were superseded by the 2012 Settlement Agreement, and argue that Neuman's efforts to avoid the consequences of that Agreement by alleging a "scheme" or "plan" relating to CIG is insufficient

---

to Mol, Heggelman and CAV …." SAC ¶ 7. Even accepting the allegations in the SAC as true, Neuman has been aware for a decade that Pillo Financial was not the owner of 100% of CIG, and he was thus aware that his 50% ownership in Pillo Financial would not have constituted a 50% ownership interest in CIG.

under Rule 9(b), the "strong inference" standard, and the "plausible on its face" standard. The Motion to Dismiss will contend that the claims in the SAC are not pled with sufficient particularity, do not allege facts giving rise to a "strong inference" of fraudulent intent, and do not state a claim to relief that is plausible on its face.

**Proposed Briefing Schedule for Motion to Dismiss**

The defendants propose the following briefing schedule for the Motion to Dismiss. These dates are proposed with the expectation that the SAC will remain the operative complaint; if plaintiff is permitted to file a Third Amended Complaint, the defendants will submit a new pre-motion letter addressed at that complaint, with a new proposed briefing schedule.

- April 22, 2021: Plaintiff's response to this pre-motion letter to be submitted.
- April 29, 2021: Initial Conference with the Court.
- May 21, 2021: Defendants to file Motion to Dismiss.
- June 11, 2021: Plaintiff to file its opposition to the Motion to Dismiss.
- June 25, 2021: Defendants to file Reply in support of their Motion to Dismiss.

We look forward to discussing the Motion to Dismiss, and the case in general, with the Court at the Initial Conference on April 29. Thank you for your attention to this matter.

Respectfully submitted,

/s/ James H. Hulme

James H. Hulme

cc: All counsel of record (via ECF)