# THE GRIFFITH FIRM

45 BROADWAY • SUITE 2200

NEW YORK, NEW YORK 10006

(212) 363-3780

DIRECT LINE: (212) 363-3784 TELECOPIER: (212) 363-3790
EMAIL: EG@THEGRIFFITHFIRM.COM URL: HTTP://WWW.THEGRIFFITHFIRM.COM


April 22, 2021

**VIA ECF**

Hon. P. Kevin Castel, U.S.D.J.
United States District Court for the
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, New York 10007

*Re: Neuman v. Garcia, et al., Case No. 1:20-cv-10723-PKC*

Dear Judge Castel:

On behalf of plaintiff Phil Neuman, this letter responds to defendants' April 16, 2021 Pre-Motion Letter (Doc 56) describing their anticipated Motion to Dismiss the Second Amended Complaint ("SAC"). The Initial Pretrial Conference is scheduled for May 7, 2021 at 11:30 a.m.

Defendants assert that this action should be dismissed on four grounds:

(i) lack of personal jurisdiction;
(ii) *forum non conveniens*;
(ii) the claims are time-barred;
(iv) the fraud claims are not pled with the requisite particularity.

Each ground lacks merit.

**1. The Court has Personal Jurisdiction over Defendants.**

The core allegation in this action is that defendant Pillo Financial Consulting Corp. ("Pillo Financial") breached its contractual obligations under an April 2010 Stock Transfer Agreement by transferring Mr. Neuman's 50% beneficial interest in defendant Carlisle Investment Group, S.à r.l. ("CIG" or the "General Partner") to defendant Pillo Portsmouth Holding Company, LLC ("Pillo Portsmouth") without Neuman's knowledge or consent. Defendant Jose Garcia executed the Stock Transfer Agreement as Officer and Director of Pillo Financial and in his individual capacity.[1]

[1] The SAC refers to CIG as the "General Partner" because CIG is the General Partner of Carlisle Management Company, S.C.A., which the SAC refers to as the "Company." SAC (Doc 54) at ¶ 2. In 2012, the parties resolved a dispute over Mr. Neuman's ownership interest in the Company and, for that reason, the Company is not a defendant in this action.

The Stock Transfer Agreement contains (i) a choice of law provision selecting New York law; and (i) a forum/personal jurisdiction provision providing that any dispute concerning the agreement:

> shall be brought … in the state o[r] *federal courts of the state of New York, and each of the Parties hereby submits to the exclusive jurisdiction of such courts in any such actions or proceeding and waives any objection to the jurisdiction or venue of such courts*.

Stock Transfer Agreement (Doc 54-1) at § 5 (emphasis added).

Thus, this Court certainly has jurisdiction over defendants Pillo Financial and Garcia. The remaining individual defendants, Tim Mol and Victor Heggelman, met with Garcia and Neuman regularly in New York City, between 2010 and 2019, at which time they made fraudulent representations or omissions regarding Neuman's 50% beneficial ownership interest in CIG. SAC (Doc 54) at ¶¶ 6-11, 34-38, 41-50. Garcia is the sole member of defendant Pillo Portsmouth, to which Garcia's fraudulent representations and omissions are attributed. Accordingly, all defendants committed torts in New York, thereby subjecting them to personal jurisdiction under New York's long-arm statute. CPLR § 302(a)(2).

Defendants' jurisdiction argument relies exclusively on their mistaken assertion that the April 2010 Stock Transfer Agreement was superseded by an April 27, 2012 Agreement resolving a dispute about Neuman's interest in Carlisle Management Company S.C.A. that had nothing to do with Neuman's ownership interest in CIG. Indeed, the April 27, 2012 Agreement begins by expressly providing:

> Whereas Jose Garcia ("JG") and Phil Neuman (PN) *have existing agreements with regard to Carlisle Management Company SCA ("Carlisle")*.
>
> Wheres JG and PN had a disagreement regarding *those agreements*.
>
> After good faith negotiations, JG, PN … *and Carlisle* hereby agree to the following:
>
> 1. All prior agreements between JG and PN are hereby superseded by this memo of agreement.

April 27, 2012 Agreement (Doc 54-6) at 1 (emphasis added).

Thus, taken in context, the only reasonable interpretation of paragraph 1 of the April 27, 2012 Agreement is that it supersedes prior agreements between Garcia and Neuman regarding

*Carlisle Management Company*, not prior agreements regarding CIG. The prior agreements regarding CIG had nothing to do with the parties' 2012 dispute and therefore were not referred to in the April 27, 2012 Agreement.

In addition, under the plain meaning of its terms, paragraph 1 of the April 27, 2012 Agreement does not supersede the April 2010 Stock Transfer Agreement because that Stock Purchase Agreement is between *Pillo Financial*, Neuman and Garcia. It therefore does not fall within the scope of paragraph 1, which is limited to agreements between only Neuman and Garcia.

The two emails annexed to the Pre-Motion Letter confirm that the April 27, 2012 Agreement resolved disputes concerning Carlisle Management Company, not CIG. Neither email even refers to CIG; both deal exclusively with the parties' dispute over Carlisle Management Company.

**2. The *Forum Non Conveniens* Doctrine Does Not Apply.**

"The Supreme Court [has] held that forum selection clauses require a substantial modification of the *forum non conveniens* doctrine, whereby the doctrine's usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum. [*M/S/ Bremen v. Zapata Off-Shore Co*.,] 407 U.S. [1,] 6 … [(1972)]. Since forum selection clauses constitute an "indispensable element in international trade, commerce, and contracting" by reducing uncertainties about where suit may be brought, the *Bremen* Court concluded that they should be invalidated only when the resisting party satisfies the 'heavy burden' of showing that 'it would be unfair, unjust, or unreasonable to hold that party to his bargain.' *Id.* at 13–14, 19, 18." *Martinez v. Bloomberg LP*, 740 F.3d 211, 228 (2d Cir. 2014).

Accordingly, the *forum non conveniens* doctrine may override a contractual forum selection clause under Bremen only "if (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Martinez*, 740 F.3d at 218–19 (internal quotations of Bremen omitted).

Defendants cannot satisfy this standard. Like their jurisdictional argument, their *forum non convenien*s argument relies exclusively on their mistaken assertion that the April 2010 Stock Transfer Agreement, which contains a mandatory New York forum selection clause, selection clause was superseded.

**3. This Action is Timely.**

The SAC alleges that defendants fraudulently concealed Pillo Financial's breach of its obligations under the April 2010 Stock Transfer Agreement between 2011 and 2019, which

thereby tolls the statute of limitations under the equitable tolling doctrine and the fraud discovery rule. Defendants nevertheless assert that this action is time-barred based on their mistaken allegation that Neuman had reason to suspect fraud and could have discovered it had he investigated. They point to a conversation between Neuman and Mol described in the SAC and emails leading to the April 27, 2012 agreement as proof that Neuman "was well aware of his claims and repeatedly threatened to file lawsuits in 2012." Pre-Motion Letter at 6-7.

Yet the parties' 2012 dispute involved Neuman's ownership interest in *Carlisle Management Company*, not CIG. At that time, Garcia was falsely assuring Neuman that his 50% beneficial interest in CIG was secure by virtue of Neuman's documented 50% ownership interest in Pillo Financial. And the resolution of the 2012 dispute contemplated an ongoing business relationship of mutual trust and confidence. Neuman therefore had no reason to doubt that his 50% beneficial interest in CIG was secure until he discovered the fraud in 2019. This action is therefore timely.

**4. The Fraud Allegations are Pled with the Requisite Specificity.**

Defendants fail to specify a single alleged misrepresentation or omission in the SAC that does not "set forth the who, what, when, where and how of the alleged fraud." Instead, they rely on their mistaken allegation that the April 2010 Stock Transfer Agreement was superseded, asserting that Neuman's fraud allegations are part of an effort "to avoid the consequences "of the April 27, 2012 Agreement. Pre-Motion Letter at 7.

That vague assertion does not challenge the specificity with which the SAC alleges fraudulent representations and omissions. Implicitly recognizing that fact, defendants tack on a *Twombly* plausibility challenge as an apparent afterthought. Pre-Motion Letter at 7-8. But there is nothing implausible about Neuman's claims, which arise from two straightforward facts:

(i) in 2011 Pillo Portsmouth breached the April 2010 Stock Transfer Agreement by transferring Neuman's beneficial 50% interest in CIG to Pillo Portsmouth without Neuman's knowledge or consent; and

(ii) for the next eight years, all of the defendants conspired to fraudulently conceal that breach from Neuman.

Sincerely,

*/s/ Edward Griffith*

Edward Griffith

EG:gb
cc: James H. Hulme, Esq.
Jule Rousseau, Esq.