UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PHIL NEUMAN,

                          Plaintiff,                          20-cv-10723 (PKC)

            -against-


                                                    OPINION AND ORDER

JOSE GARCIA, et al.,

                          Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Phil Neuman alleges that, through a series of agreements in 2009 and

2010, defendant Jose Garcia sold Neuman a 50% ownership interest in two Luxembourg

companies, Carlisle Management Group, SCA ("Carlisle Management") and Carlisle Investment

Group, S.À R.L. ("Carlisle Investment") that Garcia indirectly owned through Pillo Financial

Consulting Corp. ("Pillo Financing").  Neuman claims that he was fraudulently induced to enter

into a settlement agreement in 2012 that, in his view, provided for a reduction of his ownership

interest to 20%.  The relationship between Neuman and Garcia deteriorated and Neuman asserts

claims for breach of contract, fraudulent inducement, breach of fiduciary duty, conversion,

conspiracy to commit conversion, fraud, conspiracy to commit fraud and fraudulent conveyance

against Garcia, Carlisle Investment, Victor Heggelman, Tim Mol, Pillo Financial and Pillo

Portsmouth Holding Company, LLC.[1]

          Defendants move to dismiss the Second Amended Complaint (the "Complaint")

asserting that the Court lacks personal jurisdiction over them, the claims should be dismissed

---

[1] Carlisle Acquisition Vehicle, LLC had been named in the Second Amended Complaint but has been voluntarily
dismissed (Doc 47).

under the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>, the claims fail to state a claim for relief and certain

of them are barred by the statute of limitations.  For the reasons that will be explained, the Court

concludes that it has personal jurisdiction over Garcia, and Neuman's claims against for

fraudulent inducement (Second Claim), declaratory judgment as to the denial-of-access

allegation (Third Claim) and breach of fiduciary duty (Fourth and Fifth Claims) will survive.

The motion to dismiss will otherwise be granted.

BACKGROUND

       The Court reviews the principal allegations of the Complaint, accepting

Neuman's allegations as true and drawing all reasonable inferences in his favor as the non-

movant.

       In November 2009, Neuman purportedly acquired from Garcia "a fifty percent

(50%) ownership interest in, and equal control along with Garcia of, Carlisle

Investment/Management . . . ."  (Compl. Ex. 3.)  The November 24, 2009 letter agreement

provided that the parties would execute all agreements and documentation to effectuate the intent

of the agreement.  (<u>Id.</u>)  Thereafter, on or about April 9, 2010, a more formal Stock Transfer

Agreement (the "2010 Stock Agreement") was execute by Neuman, Garcia and Pillo Financial,

the entity through which Garcia owned Carlisle Investment and Carlisle Management.  (Compl.

Ex. 1.)  The 2010 Stock Agreement designated New York as the exclusive forum for all disputes

"arising under or in connection with" the 2010 Stock Agreement, and the parties, <u>i.e.</u>, Neuman,

Garcia and Pillo Financial, consented to jurisdiction "in the state of [sic] federal courts of the

state of New York" and "waive[ ] any objection to the jurisdiction and venue of such courts."

(<u>Id.</u> ¶ 5.)  Two other agreements with similar provisions designating New York as the exclusive

forum and consenting to jurisdiction were executed on the same day.  (<u>Id.</u> Ex. 4: Share Sale and

Purchase Agreement for Carlisle Investment & Ex. 5: Share Sale and Purchase Agreement for Carlisle Investment.)

Disputes arose between and among Neuman, Garcia and the entities, which were resolved by a letter agreement executed on April 27, 2012 (the "2012 Settlement Agreement") that provided that "[a]ll prior agreements between [Jose Garcia] and [Phil Neuman] are superseded by this memo . . . ." (Id. Ex. 6 ¶ 1.)  The one-page document also provided that "[a]ny Default under this agreement will make it null and void."  (Id. Ex. 6 ¶ 9.)

In connection with the negotiation of the 2012 Settlement Agreement, Neuman alleges that Garcia falsely represented that Neuman's 50% interested in Carlisle Management had already been registered in its shareholders' register and with the relevant Luxembourg authorities and that Neuman's 50% ownership interest in Carlisle Investment, the general partner, was still secured by Neuman's 50% ownership interest in Pillo Financial.  (Id. ¶ 34.)  He alleges that Garcia knew the representations were false because (i) Neuman's ownership interest in Carlisle Management had not been registered in its shareholders' register and with the competent Luxembourg authorities, and (ii) Pillo Financial no longer held any interest in Carlisle Investment because more than a year before Garcia had caused Pillo Financial to transfer all of its interest in Carlisle Investment to Pillo Portsmouth—a limited liability company with Garcia as its sole member.  (Id. ¶¶ 19, 35.)  Neuman claims that he reasonably relied on the representations and that they induced him to enter into the 2012 Agreement, reducing his interest in Carlisle Management from 50% to 20%.  (Id. ¶ 36.)

The 2012 Agreement provided, among other things, that Neuman would have complete use of and access at all times to existing and future Carlisle offices, would remain listed on the Carlisle website, have a Carlisle email address and have use of 25% of Tim Mol's

time.  (<u>Id.</u> Ex 6 at ¶¶ 2, 5, 6.)  Neuman alleges that, in addition to his fraudulent inducement

claim, Garcia and Mol defaulted on these provisions, rendering the 2012 Settlement Agreement

voidable.  (Compl. ¶ 71.)

The 2012 Settlement Agreement expressly provided that Neuman would receive

20% of the shares of Carlisle Investment but there would be a time lag of 120 days for regulatory

approval.  (2012 Settlement Agreement ¶ 7.)  While the transfer did not take place within 120

days, on March 22, 2013, Pillo Portsmouth sold Neuman 20% of the shares of Carlisle

Investments at the nominal price of 1€, in an agreement to which Neuman was a party. (Compl.

Ex 7.)

Neuman asserts claims for:

- Breach of the 2010 Stock Agreement against Garcia and Pillo
  Financial (First Claim);

- Fraudulent inducement relating to the 2012 Settlement Agreement
  against Garcia (Second Claim);

- Declaratory judgment that the 2012 Settlement Agreement is null
  and void against Garcia and Mol (Third Claim);

- Breach of fiduciary duty against Garcia arising out of his
  agreement with Neuman in 2009 and the 2010 Stock Agreement
  (Fourth Claim);

- Breach of fiduciary duty claim against Garcia, Pillo Portsmouth,
  Mol and Heggelman relating to his 50% interest in Carlisle
  Investment, the general partner (Fifth Claim);

- Conversion of his 50% interest in Carlisle Investment against
  Garcia, Mol, Heggelman, Pillo Financial and Pillo Portsmouth
  (Sixth Claim);

- Conspiracy to Commit Conversion of his 50% interest in Carlisle
  Investment against Garcia, Mol, Heggelman, Pillo Financial and
  Pillo Portsmouth (Seventh Claim);

- Fraud against Garcia, Mol, Pillo Financial and Pillo Portsmouth (Eighth Claim);

- Conspiracy to Commit Fraud against Garcia, Mol, Heggelman, Pillo Financial and Pillo Portsmouth (Ninth Claim); and

- Fraudulent Conveyance against Garcia, Pillo Financial and Pillo Portsmouth (erroneously numbered also as the Ninth Claim).

DISCUSSION

A.   Personal Jurisdiction

Each defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P.  On such a motion Neuman bears the burden of demonstrating the Court's personal jurisdiction over the defendants.  Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010).  The complaint's allegations are assumed to be true, and Neuman need only make a prima facie showing of personal jurisdiction.  Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013).  The Court construes any pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in plaintiff's favor.  Id. However, the Court should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation."  In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted).  This Court has "considerable procedural leeway" on a Rule 12(b)(2) motion and may decide it on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing. Dorchester, 722 F.3d at 84.

In response to defendants' motion, Neuman asserts that the Court has personal jurisdiction over (1) Garcia, Carlisle Investment and Pillo Financial on the basis of written consent to jurisdiction in New York; and (2) Mol, Heggelman and Pillo Financial on the basis of

having committed a tortious act within New York, individually or by an agent.  (Opp. Mem. at 9-16.)  No specific argument addresses the basis for jurisdiction over Pillo Portsmouth.

If the Court concludes that there is a basis for personal jurisdiction under New York law, then, as a second essential step, it must further decide whether the exercise of personal jurisdiction over the person or entity is consistent with due process of law.  Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).

      1.    Garcia and Pillo Financial.

Garcia asserts that he is a citizen of Spain who lives and works in Luxembourg and has no systematic or continuous contacts with New York.  Pillo Financial is a corporation organized under the laws of the District of Columbia with its principal place of business in the District of Columbia.  Neuman relies on the exclusive forum provision of the 2010 Stock Agreement and argues that Garcia consented to personal jurisdiction in New York.

As noted, the parties to the 2010 Stock Agreement were Neuman, Garcia and Pillo Financial. The agreement purports to have a broad consent to the exclusive jurisdiction of the state and federal courts of New York and an express waiver of any objection to jurisdiction or venue:

> This Agreement . . . shall be governed by the laws of the state of New York . . . and . . . any claims, disputes or disagreements arising under or in connection with this Agreement . . . shall be brought by any of the Parties in the state of [sic][2] federal courts of the state of New York, and each of the Parties hereby submits to the exclusive jurisdiction of such courts in any such actions or proceedings and waives any objection to the jurisdiction or venue of such courts.

(2010 Stock Agreement ¶ 5.)

---

[2] A similarly worded provision in a related agreement between Neuman and Garcia does not contain the typo, ("of" rather than "or") and refers to "the state or federal courts of the state of New York. . . ." (Compl. Ex. 4 at Art. 15.)

On its face, the provision would govern the present action to the extent it alleges that Garcia and others breached the 2010 Stock Agreement, breached their fiduciary duties in not providing him with a 50% interest in Carlisle Investment under the 2010 Stock Agreement or converted that 50% interest.  Such claims would be claims arising under or in connection with the 2010 Stock Agreement.

Garcia counters that the 2010 Stock Agreement was superseded by reason of the 2012 Settlement Agreement that provides:  "All prior agreements between JG [Garcia] and PN [Neuman] are hereby superseded by this memo of agreement."  (2012 Settlement Agreement ¶ 1.)  The language is indeed unambiguous as far as it goes, but the 2012 Settlement Agreement contains a further provision: "Any Default under this agreement will make it null and void."  (2012 Settlement Agreement ¶ 12.)  Neuman alleges breaches of the 2012 Settlement Agreement, and indeed seeks declaratory judgment that the 2012 Settlement Agreement is null and void.  He also alleges fraud in the inducement of the 2012 Settlement Agreement.

It is settled law that a subsequent agreement may supersede a prior agreement, including its designation of an exclusive forum.  See Applied Energetics, Inc. v. NewOak Cap. Markets, LLC, 645 F.3d 522, 526 (2d Cir. 2011) (subsequent agreement with a judicial forum provision supersedes prior agreement designating an arbitral forum).  The 2012 Stock Agreement is expressly made voidable in the event of a breach.  Courts will enforce a voidability provision at the behest of the party establishing the breach.[3]  Here, the Complaint plausibly alleges a breach of the 2012 Stock Agreement, thereby making it voidable at the behest of Neuman.

---

[3] "'It is a general rule that, when a written instrument provides that it shall become void in case of default by one party to perform some covenant therein contained, it becomes void only upon the claim and at the option of the party for whose benefit the covenant was inserted, and who is injured by the default.'"  Gorman v. Gorman, 283 A.D. 250, 251 (4th Dep't 1954) (quoting Born v. Schrenkeisen, 110 N.Y. 55, 59 (1888)).

A forum selection clause is presumptively enforceable where (1) it was "reasonably communicated to the party resisting enforcement," (2) it is "mandatory," and (3) "the claims and parties involved in the suit are subject to the forum selection clause." Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007). The clause was reasonably communicated because it is in plain language in the text of the 2010 Stock Agreement. It is mandatory because it states that any claims "shall be brought" in the designated forum. The claims in this suit are subject to the clause because they "arise" under the terms of the 2010 Stock Agreement or are in "connection with" that agreement, such as the declaratory judgment and fraud claims that seek to void the 2012 Settlement Agreement, with the consequence of reviving the viability of the 2012 Settlement Agreement. This presumption of enforceability may be overcome by the fourth factor: (4) a showing that enforcement would be "unreasonable or unjust," or that the clause was "invalid for such reasons as fraud or overreaching." Id. at 384 (internal quotation marks omitted). Despite their advancement of an argument that New York is an inconvenient forum, no credible showing has been made by defendants that litigating this action in the federal court in New York would be unreasonable or unjust or that the clause is otherwise invalid.

A party who has elected to consent to an exclusive forum for dispute resolution waives the right to challenge the convenience of the forum in all but exceptional circumstances. Lvar, L.P. v. Berm. Comm. Bank Ltd., 649 Fed. App'x 25, 26 (2d Cir. 2016) (citing Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 60 (2013)); see also Maersk Line A/S v. Carew, 19 cv 4870 (JPC), 2022 WL 602851, at *8 (S.D.N.Y. Mar. 1, 2022).

The Court agrees with those district courts that have held that where a party consents to personal jurisdiction in a forum, there can be no obstacle to the exercise of that

jurisdiction under the due process clause.  See, e.g., NuMSP, LLC v. St. Etienne, 462 F. Supp. 3d

330, 342 (S.D.N.Y. 2020); Gordian Grp., LLC v. Syringa Expl., Inc., 168 F. Supp. 3d 575, 581

(S.D.N.Y. 2016); Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V., 09 cv 3573 (PGG), 2010

WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010); ICC Indus. v. Isr. Disc. Bank, Ltd., 04 Civ.

6945(DC), 2005 WL 1844616, at *5 (S.D.N.Y. July 29, 2005).

Having considered the declarations and documentary evidence on each side, the

Court concludes that in the case of Garcia and Pillo Financial, Neuman has plausibly alleged a

claim that the 2012 Settlement Agreement is voidable by reason of a breach of its terms, and, in

this preliminary context, defendants have not effectively rebutted these allegations.  Thus, the

exclusive forum provision of the 2010 Stock Agreement controls, and this Court may exercise

personal jurisdiction over Garcia and Pillo Financial.

2.      Carlisle Investment and Pillo Portsmouth

Carlisle Investment is alleged to be *société à responsabilité limitée* organized

under the laws of Luxembourg with its principal place of business there.  (Compl. ¶ 21.)  Carlisle

Investment managed the funds of Carlisle Management as its general partner.  (Id. ¶ 2(ii).)  Mol,

Garcia and Heggelman are alleged to be the managing directors of Carlisle Investment.  (Id.

¶ 13.)

The body of the Complaint frequently mentions the "General Partner," i.e.,

Carlisle Investment, but it is not named as a defendant in any of the nine claims for relief.

Carlisle Investment is the entity in which Neuman claims he has or should have a 50%

ownership interest.  At most, Carlisle Investment is a relief defendant.  Neuman seeks a full

accounting of Carlisle Investment and an injunction against it taking any action without his

consent.  (Id. ¶ 117(v) & (vi).)

Carlisle Investment was not a party to the 2010 Stock Agreement.  There are three parties identified as parties to the agreement, none of whom is Carlisle Investment.  (2010 Stock Agreement.)  Nor was Carlisle Investment a party to the separate 2010 Share Sale and Purchase Agreement with a similar New York exclusive-forum provision.  (Doc 54-4.)  The parties to that agreement are unambiguously identified as Neuman and Garcia.  It identifies the agreement as having been made "[i]n the presence of" Carlisle Investment.  On the execution page after the signatures of Neuman and Garcia, there is a statement to which only Carlisle Investment is a signatory, which states that the transfer of shares is accepted by Carlisle Investment in accordance with Luxembourg law.  This separate acknowledgement did not make Carlisle Investment a party to the terms of the agreement, including its exclusive forum provision.  Thus, Carlisle Investment has not consented to New York as an exclusive forum.

Pillo Portsmouth, according to the Complaint, was the transferee of Pillo Financial's interest in the General Partner; this, it is alleged, was a fraudulent conveyance by Garcia and Pillo Financial for the purpose of depriving Neuman of his 50% beneficial interest in Carlisle Investment.  (Compl. ¶ 113.)  Neuman alleges that Pillo Portsmouth is a Delaware limited liability company whose sole member is Jose Garcia.  (Id. ¶ 19.)  Because a limited liability company takes on the citizenship of its member or members, it takes on the Spanish citizenship of Garcia.[4]  (Id.)

Pillo Portsmouth is alleged to have received the transfer of the 50% interest in May 11, 2011 (id. ¶¶ 76-77), a year after the 2010 Stock Agreement containing the forum selection clause.  Pillo Portsmouth became a registered owner of Carlisle Investments, the

---

[4] See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000); Strother v. Harte, 171 F. Supp. 2d 203, 205 (S.D.N.Y. 2001).

general partner. Pillo Portsmouth is alleged to have participated in a breach of fiduciary duty, fraud and conversion.

Neither Carlisle Investment nor Pillo Portsmouth consented to New York as an exclusive forum.  Carlisle Investment and Pillo Portsmouth will be dismissed for lack of personal jurisdiction.[5]

   4. <u>Mol and Heggelman.</u>

Timo Henk Mol is a citizen of the Netherlands and has resided in Luxembourg for about 12 years.[6]  He does not own any property or maintain bank accounts in New York and has never lived in New York.  He is Chief Operating Officer of Carlisle Management and Manager of Carlisle Investment.  **According to his declaration,** "I met Mr. Neuman numerous times between 2011 and 2019, all of which I would describe as primarily, if not entirely, social in nature.  Most of these meetings took place in Europe (in Luxembourg, Geneva, Zurich, and Vienna), and a handful took place in various cities in the United States (in New York, Miami, and Las Vegas)."  (Mol Decl. ¶ 7.)

Victor Heggelman is a citizen of Luxembourg who has resided there since 2009. He is the Chief Financial Officer of Carlisle Management. He does not own any property or maintain bank accounts in New York.  There are no allegations in the Complaint that he met with Neuman in New York.  In his declaration, Heggelman "recall[s] meeting with Mr. Neuman in the United States on only two occasions: once in Washington, DC in 2009, and once in Austin, Texas in 2016.  I also recall meeting with Mr. Neuman on two occasions in Luxembourg." (Heggelman Decl. ¶ 6.)

---

[5] At this juncture, the Court does not reach the question whether the assets of Pillo Portsmouth, a limited liability company of which Garcia is the sole member, would be answerable for any judgment against him or whether Garcia could be ordered to take action (or refrain from taking action) with respect to Pillo Portsmouth.
[6] The facts are set forth in Mol's Declaration of November 5, 2021.

Neuman relies on New York's long-arm statute for personal jurisdiction over Mol and Heggelman. The statute, insofar as relied on here, provides that "a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or through an agent: 2. commits a tortious act within the state. . . ." N.Y. CPLR §302(a)(2). "New York courts and the Second Circuit have 'consistently interpreted § 302(a)(2) jurisdiction narrowly.'" Krisko v. Marvel Ent., LLC, 473 F. Supp. 3d 288, 299 (S.D.N.Y. 2020) (quoting Carlson v. Cuevas, 932 F. Supp. 76, 79 (S.D.N.Y. 1996)). "[A] defendant's tortious act must have occurred while the defendant was physically present in New York." Krisko, 473 F. Supp. 3d at 299. "To be considered an agent for jurisdictional purposes, the alleged agent must have acted in the state 'for the benefit of, and with the knowledge and consent of' the non-resident principal." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 366 (2d Cir. 1986) (quoting Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981)).

The allegations of the Complaint that purport to support the alleged commission of a tortious act within the state are set forth in paragraphs 49 and 50. Paragraph 49 places Mol at meetings in Fort Lauderdale, Miami, Austin, New York and Luxembourg on various dates during the period 2015 through 2019, and Heggelman at meetings in Austin and Luxembourg in 2017 and 2019.

The gist of the claim is that "[a]t each of these meetings, Neuman made a point of joking with Garcia and/or Mol that he retained veto power over any management decision to which Neuman disagreed due to Neuman's 50% beneficial interest in the General Partner, which he held through his 50% ownership interest in Pillo Financial. Garcia consistently agreed that Neuman held such veto power." (Compl. ¶ 50.) Neuman alleges that Mol and Heggelman knew Garcia was lying and said nothing about it. (Id.)

The Court generously assumes that Neuman has alleged that Mol committed a tortious act in New York by his attendance at meetings at which he did not contradict Neuman's claim of 50% ownership.  The exercise of personal jurisdiction over Mol would nevertheless fail to comport with due process.  In the case of Heggelman, paragraph 49 lists Neuman's meeting sites with Heggelman, but no meetings in New York.  In his opposition memorandum, Neuman points out that paragraphs 8 and 9 of the Complaint place Heggelman, along with Mol and Garcia, at meetings during the period 2010 to 2019 in New York, Luxembourg, Geneva and other locations, at which Garcia allegedly made false statements that were not corrected by Mol or Heggelman.  The allegation is vague and non-specific, purporting to cover a nine-year period at locations around the globe.  Even if it is generously assumed that the Complaint plausibly alleges that Heggelman was in New York for one of the meetings, the exercise of personal jurisdiction over him also would not comport with due process.

There are two components to the due process analysis.  Chloe, 616 F.3d at 164. First, the Court engages in a minimum contacts inquiry to determine whether there are sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.  Id.  Second, the Court considers the reasonableness of the exercise of jurisdiction.  Id.

For these purposes of the minimum contacts analysis, the Court looks at the totality of the contacts with the forum state.  Id.  Having scrutinized the Complaint, and the evidence offered by the parties, there is no nexus between these two foreign nationals or the claims in the Complaint with New York beyond the happenstance that Mol attended several meetings in New York.  No mention is made of any conversation or event occurring that was different in kind, character or content than the meetings held in Ft. Lauderdale, Miami, Austin or

Luxembourg.  Neither Mol nor Heggelman are alleged to have transacted any business specific to New York.

Neither Mol nor Heggelman are alleged to have any role whatsoever in negotiations between Neuman and Garcia in New York in 2009-10.  The first allegation of any meetings with Mol or Heggelman was in 2013.  (Compl. ¶ 49.)

Both individuals were officers of Carlisle Investments, an entity organized under the laws of Luxembourg with its principal place of business in Luxembourg.  (Compl. ¶ 21.) Carlisle Investments is not alleged to have had offices in New York or to have owned or leased property in New York.  Carlisle Management, an entity different than Carlisle Investments, invests in U.S.-based life insurance settlements, which are acquired through brokers principally located in New York.  (Neuman Decl. ¶ 3 (Doc. 96.).)  Neuman opines that "many" investors in Carlisle Management are in New York.  (Id.)  There is no claim that Mol or Heggelman have interacted on a regular basis with New York brokers or investors.

The minimum contacts analysis tilts heavily in favor of Mol and Heggelman.

With regard to the reasonableness inquiry, "The Supreme Court has held that courts must evaluate the following factors as part of this 'reasonableness' analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  Chloe, 616 F.3d at 164.

The burden on Mol and Heggelman is severe because they are named in their individual capacities and would be potentially answerable to discovery requests and appearances

in New York, distant from their domiciles in the Netherlands and Luxembourg. The interests of

the forum state, New York, is low. No individual party to this action is a citizen of New York.

None of the entities at issue are incorporated in New York and they do not maintain their

principal places of business here. Neuman's interest in obtaining convenient and effective relief

in this forum is entitled to some, but minimal, weight. First, Neuman was once a New York

domiciliary but is now a Nevada domiciliary. Second, while New York is geographically more

convenient for Neuman (and he still claims to reside from time to time in Manhattan), according

to defendants, he has retained counsel and brought an action in Luxembourg, and Garcia and

Philo Financial have brought suit against Neuman in Luxembourg. There is no special

inconvenience to Neuman in pursuing any claims against these two individuals in a European

forum. There are no relevant interests of the interstate judicial system because Mol and

Heggelman are foreign nationals and there is no "shared interest of the states in furthering

substantive social policies." Chloe, 616 F.3d at 164.

The Court concludes, upon a minimum contacts and reasonableness inquiry, that

the exercise of personal jurisdiction over Mol and Heggelman in New York would be

inconsistent with due process of law. The motion to dismiss on personal jurisdiction grounds

will be granted as to them.

B.   Forum Non Conveniens.

Because the only parties over whom the Court may exercise personal

jurisdiction, Garcia and Pillo Financial, have consented to New York as the exclusive

forum, and such consent forecloses an inconvenient forum argument, the Court need not

further address defendants' *forum non conveniens* claim.

C.    Application of the Statute of Limitations to the Contract Claims.

Defendants assert that Neuman's claim of breach of the 2010 Stock Transfer Agreement is barred by New York's six-year limitations period for breach of contract. N.Y. CPLR § 213(2). The Complaint alleges that "Garcia had caused Pillo Financial to transfer all of its interest in the General Partner to Pillo Portsmouth on or about May 11, 2011." (Compl. ¶¶ 35, 57.) The action was commenced on December 18, 2020, more than nine years later. While Neuman raises arguments relating to the 2012 Settlement Agreement, he does not specifically address the argument that the alleged breach of the 2010 Stock Transfer Agreement is time-barred.

As noted, the statute of limitations for breach of contract claims in New York is six years. N.Y. CPLR § 213(2). The statute begins to run at the time of the breach, regardless of whether the plaintiff is aware of the breach at that time. See Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 402-04 (1993); ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 360 (2d Cir. 1997) ("[I]n New York it is well settled that the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered.") (citations omitted); Rosenblatt v. Christie, Manson & Woods Ltd., 04 cv 4205 (PKC), 2005 WL 2649027, at *11 (S.D.N.Y. Oct. 14, 2005), aff'd sub nom., Rosenblatt v. Christie, 195 Fed. App'x 11 (2d Cir. 2006).

Here, the breach of the 2010 Stock Transfer Agreement was complete when Pillo Financial transferred the shares held by Pillo Financial to Pillo Portsmouth in 2011. Because the breach occurred more than six years before the institution of this action, it is time-barred.

Defendants also allege that any breach of the 2012 Settlement Agreement occurred more than six years before the institution of the action. The Third Claim alleges that (1)

"Neuman never received 'full access' to the Carlisle offices, or to the desk, equipment and services promised in paragraph 2 of the April 27, 2012 Agreement" (Compl.¶ 71(i)); (2) "After Neuman commenced this action in December 2020, Garcia and Mol removed Neuman from the Carlisle website despite the promises made in paragraph 4" (Id. ¶ 71(ii)); and (3) he "did not receive exclusive use of 25% of Mol's time; on the contrary, Mol refused to enter into a consultancy agreement as promised in paragraph 6." (Id. ¶ 71(iii).)

Neuman concedes that some of the breaches took place shortly after the execution of the 2012 Settlement Agreement. (Opp. Mem. at 25.) "Neuman agrees that those breaches are time barred because no tolling doctrine applies." (Id.)

But Neuman also relies on the continuing breach doctrine. New York recognizes that "an alleged promise may have been a continuing obligation, in which case, under New York's doctrine of continuing performance, 'each successive breach may begin the statute of limitations running anew.'" Bice v. Robb, 324 Fed. App'x 79, 81 (2d Cir. 2009) (citing Guilbert v. Gardner, 480 F.3d 140, 150 (2d Cir. 2007) and Bulova Watch Co. v. Celotex Corp., 46 N.Y.2d 606, 611 (1979)).

Viewing the allegations in a light most favorable to Neuman, the removal of Neuman from the website after the commencement of this action is timely and the denial of full access to certain offices was a continuing breach. These are the only breaches of the 2012 Settlement Agreement that survive.

### D. Particularity of the Fraud-Based Claims

Defendants assert that Neuman has not alleged the fraud-based claims (Second, Eighth and (first) Ninth Claims) with the particularity required by Rule 9(b). "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends

were fraudulent, (2) identify the speaker, (3) state where and when the statements were made,

and (4) explain why the statements were fraudulent.'" <u>Lerner v. Fleet Bank, N. A.,</u> 459 F.3d

273, 290 (2d Cir. 2006) (quoting <u>Mills v. Polar Molecular Corp.,</u> 12 F.3d 1170, 1175 (2d Cir.

1993)). Conclusory allegations unsupported by factual assertions lack the particulars

that Rule 9(b) requires.  <u>ATSI Communications, Inc. v. Shaar Fund, Ltd.,</u> 493 F.3d 87, 99 (2d

Cir. 2007).

> Neuman responds *in toto* as follows:
>
> The SAC's fraud allegations specify the "who, what, when, where and how of the alleged fraud."  *See*, *e.g.*, SAC [54] at ¶¶ 49(i)-49(v) (specifying the location, date, and persons in attendance at five meetings between 2015 and 2019), ¶ 50 (specifying the fraudulent misrepresentations and omissions made at those meetings). The fraud claims are therefore pled with Rule 9(b) requisite specificity under the case law cited by the Garcia Parties.

(Opp. Mem. at 24.)

But Neuman's Complaint states in a conclusory manner that, for each of seven

dates from 2015-19 on which there were either "multiple meetings" or "several meetings" in five

different cities, the same, identical statement was made by Neuman, confirmed by Garcia and not

disputed by Mol or Heggelman.  (Compl. ¶¶ 49-50; <u>see also id.</u> ¶¶ 8-9.)  This is insufficient to

satisfy Rule 9(b).

"Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged

fraudulent statements to 'defendants'."[7]  <u>Mills,</u> 12 F.3d at 1175. "Where multiple defendants are

asked to respond to allegations of fraud, the complaint should inform each defendant of the

nature of his alleged participation in the fraud." <u>DiVittoria v. Equidyne Extractive Indus.,</u>

<u>Inc.,</u> 822 F.2d 1242, 1247 (2d Cir. 1987).  Because Rule 9(b) requires that a defendant receive

---

[7] Listing the actual surnames of the defendants but doing it in a summary fashion is no better.

fair notice of the fraud claim, "a plaintiff alleging a claim sounding in fraud against multiple defendants under Rule 9(b) must 'plead with particularity by setting forth separately the acts complained of by each defendant'." Ningbo Prods. Import & Export Co. v. Eliau, 2011 WL 5142756, at *7 (S.D.N.Y. Oct. 31, 2011) (emphasis in original; quoting Soft Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006)); see also Ritani, LLC v. Aghjayan, 970 F. Supp. 2d 232, 250 (S.D.N.Y. 2013) ("To begin with, Rule 9(b) is not satisfied by a complaint in which defendants are clumped together in vague allegations.") (Sweet, J.) (quotation marks omitted).

Rule 9(b) is satisfied, however, as to certain representations made in phone calls between Neuman and Garcia on April 27, 2012, which are detailed in the Complaint and form the fraudulent inducement claim against Garcia (Second Claim). The particulars detailed in the Complaint are sufficient to satisfy Rule 9(b). (Compl. ¶¶ 34-38, 63.)

The fraud claim (Eighth Claim) against Garcia, Mol, Pillo Financial and Pillo Portsmouth and the conspiracy to commit fraud claim (Ninth Claim) against Garcia, Mol, Heggelman, Pillo Financial and Pillo Portsmouth are all premised on fraudulent misstatements and omissions of the vague, group-oriented type. These claims do not inform the defendant of the particulars that form the basis for the claims. Neuman has stated a claim against Garcia for fraudulent inducement under Claim Two, but he has failed to particularize his Eighth and Ninth claims against any defendant, and they will be dismissed under Rule 9(b).[8]

Neuman also alleges a fraudulent conveyance claim (the second Ninth Claim) against Garcia, Pillo Financial and Pillo Portsmouth. Pillo Portsmouth has already been dismissed for lack of personal jurisdiction. The claim as it relates to Garcia and Pillo Financial is

---

[8] The claims against Mol, Heggelman, Pillo and Portsmouth will be dismissed for lack of personal jurisdiction. Rule 9(b) provides an alternate ground to dismiss the claims against them.

that Pillo Financial conveyed what should have been Neuman's interest in Carlisle Investment to Pillo Portsmouth in order to "fraudulently" deprive him of that interest.  (Compl. ¶ 115.)  New York's uniform fraudulent conveyance statute, N.Y. Debtor and Creditor Law §§ 270 to 281, describes a variety of conveyances that may be actually or constructively fraudulent to a creditor. The claim here is fairly construed as a claim of actual fraud on the part of Garcia and Pillo Financial in connection with the conveyance, and thus is subject to Rule 9(b).  N.Y. Debtor Creditor Law § 273; In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir. 2005) (because "actual intent to hinder, delay, or defraud constitutes fraud, it must be pled with specificity, as required by Fed. R. Civ. P. 9(b).") (citation omitted).  But the allegations regarding a fraud in connection with the conveyance by Pillo Financial and its relationship to Neuman as a creditor of the transferor is not alleged with particularity.  Neuman has successfully pled a fraud claim against Garcia but he has failed to allege with particularity how the transfer was intended by Pillo Financial to defraud him in any capacity as a creditor.   The fraudulent conveyance claim will therefore be dismissed.

E.   Statute of Limitations for Fraud Claims

Defendants assert that the fraud-based claims are time-barred.   Under New York's statute of limitations, the period for commencing "an action based upon fraud" "shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. 213(8).  "The test regarding when a plaintiff should have discovered an alleged fraud is an objective one."  Prestandrea v. Stein, 262 A.D.2d 621, 622 (2d Dep't 1999).  Defendants assert that the action was commenced neither within six years of accrual nor within two years of discovery.

In addition to denying that he should have discovered the fraud more than two years before commencement of the action, Neuman also relies on the doctrine of equitable tolling. "[W]here fraud or concealment of the existence of a claim prevents an individual from timely filing, equitable tolling of a statute of limitations is permitted until the fraud or concealment is, or should have been, discovered by a reasonable person in the situation." Iavorski v. I.N.S., 232 F.3d 124, 134 (2d Cir. 2000). "[E]quitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled." Id. (quotation marks omitted).

Defendants premise their argument on certain allegations of the Complaint, supplemented by emails that they assert are properly considered on a motion to dismiss for lack of personal jurisdiction. There is no cited authority for the proposition that, on a motion to dismiss based upon a statute of limitations-based affirmative defense, a Court may properly consider evidence submitted in connection with a jurisdiction-based motion. This would give a movant the ability to bootstrap an advantage on a Rule 12(b)(6) motion by also raising a jurisdictional challenge. The well-established case law on the standards for deciding a Rule 12(b)(6) motion define what a court may consider, and the Court declines defendants' invitation to expand them.

The statute-of-limitations defense, the application of the discovery rule and equitable tolling are fact-based issues poorly suited to resolution at the pleading stage. Defendants may raise these issues, of course, after the close of fact discovery.

F.    Conversion Claims.

Neuman's conversion claim (Sixth Claim) is predicated on that allegation that he was contractually entitled to a 50% interest in Carlisle Investments and was wrongfully deprived

- 21 -

of that interest.  (<u>See</u>, <u>e.g.</u>, Compl. ¶ 85 ("Neuman has the right to a 50% beneficial interest in the General Partner arising from (i) the April 9, 2010 Share Sale and Transfer Agreement between Pillo Financial and Neuman annexed hereto as Exhibit 4, which transferred a 50% interest in the General Partner to Neuman; and (ii) the Stock Transfer Agreement annexed hereto as Exhibit 1, which transferred a 50% interest in Pillo Financial to Neuman.").)  The Court need not consider the other grounds for dismissing the claim.  "The conversion claim . . . fails because such a cause of action cannot be predicated on a mere breach of contract, and no independent facts are alleged giving rise to tort liability."  <u>Kopel v. Bandwidth Tech. Corp.</u>, 56 A.D.3d 320, 320 (1st Dep't 2008) (quoting <u>Fesseha v. TD Waterhouse Inv. Servs.</u>, 305 A.D.2d 268, 269 (1st Dep't 2003)).

Neuman's conspiracy to commit conversion claim (Seventh Claim) relies on the inadequately pled fraud allegations and will be dismissed.  (Compl. ¶ 97 ("Mol and Heggelman knew of this wrongful conversion but failed to disclose it to Neuman despite his fiduciary duty to do so.").)

G.      <u>Breach of Fiduciary Duty.</u>

Neuman has asserted breach of fiduciary duty (Fifth Claim) claim against Garcia, Pillo Portsmouth, Mol and Heggelman.  All but Garcia have been dismissed for lack of personal jurisdiction.  The Fourth Claim brings a separate breach of fiduciary duty claim against Garcia only.

The Fourth Claim asserts that Garcia owes Neuman a fiduciary duty under the November 24, 2009 letter agreement and the April 9, 2010 Stock Transfer Agreement "due to their joint ownership of the Company and the General Partner," <u>i.e.</u>, Carlisle Management and Carlisle Investments, and that Garcia breached this duty by causing Pillo Financial to liquidate its interest in Carlisle Investments and transferring Garcia's ownership interest to Pillo

Portsmouth without Neuman's knowledge and consent.  (Compl. ¶¶ 74, 76.)  The Fourth Claim

is premised on the same purported misrepresentations that form the basis of the Second Claim,

which alleges fraudulent inducement against Garcia.  (Id. ¶¶ 34-38.)  As discussed, the Court has

concluded that those allegations satisfy Rule 9(b).  The Fourth Claim will also survive dismissal.

 In the Fifth Claim, Neuman alleges that Garcia owed him a fiduciary duty

"through his indirect beneficial ownership interest in the General Partner," i.e., Carlisle

Investments, and breached that duty by excluding him from participation and profits.  (Compl. ¶

79.)  At the pleading stage, these claims against Garcia survive dismissal under Rule 8(a), Fed.

R. Civ. P.

 The Fifth Claim also asserts that Pillo Portsmouth, Garcia, Mol, Heggelman

breached their fiduciary duties "by falsely representing that the General Partner has neither

earned nor distributed profits."  (Compl. ¶ 82.)  This allegation fails the Rule 9(b) particularity

requirements for a breach of fiduciary duty based on fraudulent conduct.  This aspect of the

breach of fiduciary duty claim will be dismissed.

CONCLUSION

 The Court has considered each of the arguments and submissions of the parties,

including those not expressly referenced herein.  The motion to dismiss is GRANTED to the

extent indicated and otherwise DENIED: (1) all claims against Mol, Heggelman, Carlisle

Investment and Pillo Portsmouth are dismissed for lack of personal jurisdiction; (2) the breach of

contract claim (First Claim) against Garcia and Pillo Financial is dismissed as barred by the

statute of limitation; (3) the declaratory judgment claim (Third Claim) is dismissed except for

allegations that Neuman was removed from the website and never received "full access" to

offices, or to the desk, equipment and services; (4) the breach of fiduciary duty claim (Fifth

Claim) against Pillo Portsmouth, Mol and Heggelman is dismissed for failure to allege fraud with the particularity; (5) the conversion claim (Sixth Claim) is dismissed for failure to state a claim; (6) conspiracy to commit conversion (Seventh Claim) is dismissed for failure to state a claim; (7) the fraud claim (Eighth Claim) against Garcia, Mol, Pillo Financial and Pillo Portsmouth is dismissed for failure to allege fraud with particularity; (8) the conspiracy to commit fraud claim (first Ninth Claim) against Garcia, Mol, Heggelman, Pillo Financial and Pillo Portsmouth is dismissed for failure to allege fraud with particularity; and (9) the fraudulent conveyance claim (second Ninth Claim) is dismissed for failure to allege fraud with particularity. The Court concludes that it has personal jurisdiction over Garcia, and Neuman's claims survive against him for (1) the fraudulent inducement claim (Second Claim); (2) the declaratory judgment claim (Third Claim) as to the denial-of-access allegation; and (3) the breach of fiduciary duty claims (Fourth and Fifth Claims).

       The Court has also carefully considered Neuman's motion to reconsider the Court's Opinion and Order of April 27, 2022 denying his motion to further amend the Second Amended Complaint, and has done so with the benefit of having examined the operative pleading and the briefing on the motion to dismiss.  The Court concludes that Neuman's challenges in the motion to reconsider to the chronology of events recited in the April 27 Opinion and Order and their import do not affect the soundness of the Court's conclusion. While defendants' opposition to the initial motion to amend did raise issues concerning the propriety of Neuman's actions in other instances, these arguments played no role in the Court's decision on the motion to amend.  The motion to reconsider is DENIED.

       The Clerk shall terminate the motions (Doc. 68 & 95).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        September 23, 2022